Moses SMITH *v.* STATE of Arkansas

CR 74-5                                                    508 S.W. 2d 54

Opinion delivered April 22, 1974

*Robert A. Newcomb,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Dep. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Moses Smith was charged with the crime of murder in the first degree by information filed June 3, 1970. After having been found guilty of murder in the second degree by a jury on June 28, 1971, he was sentenced to 17 years in the penitentiary. Commitment was issued on June 29, 1971. On February 9, 1973, Circuit Judge John Goodson received a handwritten "Motion for Recovery of Jail Time Pursuant to Chapter 12, Section 153, Page 112, Paragraph 3, Arkansas Criminal Procedure Manual." In it Smith sought to be credited with 393 days spent in jail prior to his being sentenced, alleging that he was incarcerated from June 2, 1971, to June 28, 1972. This motion was denied by the circuit judge on March 22, 1973, without a hearing. Of course, the circuit court had no jurisdiction to alter the sentence, after appellant had been committed and entered upon its execution. *Emerson* v. *Boyles,* 170 Ark. 621, 280 S.W. 1005. In the order, the circuit court specifically found that time for which credit was sought was time spent in jail prior to determination of guilt rather than prior to pronouncement of sentence and that all delays in the period before trial were

at the request of Smith, "including the exemption for legislative immunity of his employed counsel."

On October 19, 1973, appellant, proceeding more appropriately, filed a motion to vacate his sentence under Criminal Procedure Rule No. 1. He was represented in this proceeding by the designated Attorney for Inmates at the Arkansas Department of Corrections. In this motion, he alleged that he was arrested on June 2, *1970,* and remained in custody until June 28, *1971,* when he was sentenced for the full 17-year term fixed by the jury. He asserted that the failure to give him credit for the time he spent in jail, without bond, awaiting trial, violated his rights under the Constitution of the United States. This motion was denied by a different circuit judge who presides over the Second Division of the Circuit Court of Clark County, Arkansas, on October 22, 1973, also without a hearing. The court found, and the record discloses, that the period of incarceration was that alleged in the second motion. This judge held that giving credit for jail time amounts to a reduction in sentence and lies within the sound discretion of the court, and that there had been no "allegation or offer" that the court had abused its discretion. The court gave no consideration to appellant's contention that failure to give him credit for time he was incarcerated while awaiting trial violated the "due process" and "equal protection" clauses of the Fourteenth Amendment to the United States Constitution.

No doubt the circuit judge who denied relief under Criminal Procedure Rule No. 1 was acting, with some justification, in reliance upon our statute digested as Ark. Stat. Ann. § 43-2813 (Supp. 1973) and our decisions in such cases as *Harper* v. *State,* 249 Ark. 1013, 462 S.W. 2d 847, and *Kimble* v. *State,* 246 Ark. 407, 438 S.W. 2d 705. See also, *Shelton* v. *State,* 255 Ark. 932, 504 S.W. 2d 348 (1974).

We do not seem to have given any direct treatment, however, of the constitutional question posed when an indigent is held in jail without bond pending trial. Our statute does not appear to be unconstitutional upon its face. It has long been recognized, apparently without question, that, in the absence of a statute providing otherwise, the allowance of credit for this time is discretionary with the trial court. 24B

C.J.S. 644, Criminal Law, § 1995(5). See also, *Gross* v. *Sarver*, 307 F. Supp. 1105 (D. C. Ark. 1970). But if the statute is applied in a manner which denies equal protection of the laws or due process of law to an indigent, the application might well be in violation of the Fourteenth Amendment to the United States Constitution. See *Williams* v. *Illinois*, 399 U.S. 235, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970). While we may be soon called upon to determine whether such an application of the statute does violate these constitutional provisions, this case cannot afford the vehicle for a definitive holding on this question, for reasons hereafter stated.

The United States Supreme Court has not treated the question directly. Although we need not speculate upon that court's answer whenever it is directly confronted with the question, we find several decisions of that court which seem unequivocally to point the way to the proper approach to the constitutional issues.

First, there are the cases requiring that, in order to meet Fourteenth Amendment due process and equal protection demands, indigent defendants must be afforded review as adequate and effective as that given one financially able by providing free transcripts and other means of presenting their contentions to the appellate court which are as good as those available to a nonindigent defendant with similar contentions. *Griffin* v. *Illinois*, 351 U.S. 12, 76 S. Ct. 585, 100 L. Ed. 891, 55 A.L.R. 2d 1055 (1956); *Eskridge* v. *Washington State Board of Prison Terms and Paroles*, 357 U.S. 214, 78 S. Ct. 1061, 2 L. Ed. 2d 1269 (1958); *Draper* v. *Washington*, 372 U.S. 487, 83 S. Ct. 774, 9 L. Ed. 2d 899 (1963).

Following *Griffin*, the United States Supreme Court held that refusal of access to the courts for relief by appeal or petition for habeas corpus by reason of inability of an indigent prisoner to pay filing fees was a denial of equal protection of the laws to him. *Burns* v. *Ohio*, 360 U.S. 252, 79 S. Ct. 1164, 3 L. Ed. 2d 1209 (1959); *Smith* v. *Bennett*, 365 U.S. 708, 81 S. Ct. 895, 6 L. Ed. 2d 39 (1961). In *Rinaldi* v. *Yeager*, 384 U.S. 305, 86 S. Ct. 1497, 16 L. Ed. 2d 577 (1966), it was held that once avenues of appellate review have been established by a state, they must be kept free of unreasoned distinctions that would impede open and equal access to the courts by indigents.

In *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799, 93 A.L.R. 2d 733 (1963), the court held that the Sixth Amendment right to counsel was so fundamental and essential to a fair trial that it was made obligatory upon the states by the Fourteenth Amendment, overturning the decision in *Betts* v. *Brady*, 316 U.S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595 (1945), that refusal to appoint counsel for an indigent defendant did not necessarily violate the due process clause of the Fourteenth Amendment. On the same day *Gideon* and *Draper* were decided, the court handed down its opinion in *Douglas* v. *California*, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963), reh. denied 373 U.S. 905, 83 S. Ct. 1288, 10 L. Ed. 2d 200 (1963), in which it was held that failure to appoint counsel for an indigent on an appeal, granted as a matter of right, constituted an invidious discrimination and denial of due process in violation of the Fourteenth Amendment.

Then there are the cases in which imprisonment of indigent persons has been held to violate the Fourteenth Amendment whenever it results from financial inability of the indigent to pay fines or court costs. In *Williams* v. *Illinois,* 399 U.S. 235, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970), it was held that continuing an indigent person in custody beyond the maximum statutory term for the offense for which he was committed because of his involuntary failure, due solely to his indigency, to satisfy monetary portions of his sentence constituted impermissible discrimination resting on ability to pay and violated the equal protection clause. Subsequently, in *Tate* v. *Short*, 401 U.S. 395, 91 S. Ct. 668, 28 L. Ed. 2d 130 (1971), the court held that imprisonment of one punished only by fine solely because of his inability to pay the fine due to indigency was also a violation of the equal protection clause.

The basic purpose of the United States Supreme Court in these cases finds expression in *Williams* v. *Illinois,* supra, where the court, speaking through Chief Justice Burger, said:

> In the years since the Griffin case the Court has had frequent occasion to reaffirm allegiance to the basic command that justice be applied equally to all persons. Subsequent decisions of this Court have pointedly demonstrated that the passage of time has heightened

rather than weakened the attempts to mitigate the disparate treatment of indigents in the criminal process.

Every instance, in which a statute or its application works an invidious discrimination by visiting different consequences upon two categories of persons solely because of one's financial inability has resulted in a finding that the Fourteenth Amendment had been violated. We find nothing in *McGinnis* v. *Royster*, 410 U.S. 263, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1973), which dilutes the impact of prior decisions based upon disparity of treatment of the rich and the poor.

The principles leading to these results have been applied in many courts to require that pretrial confinement be credited upon a sentence imposed on conviction, where the person sentenced was without the means to provide bail in a reasonable amount. See, e.g., *Ham* v. *North Carolina*, 471 F. 2d 406 (4th Cir. 1973). These standards and requirements vary from jurisdiction to jurisdiction and are sometimes based upon statutes.

We can agree with appellant that there is no rational basis for distinguishing between a prisoner who is forced to remain in prison after completion of his sentence because of indigency and one who must remain in jail prior to his trial solely because of indigency. Financial inability to post bond should not cause an indigent to spend more time in confinement than one whose wealth enables him to be admitted to bail. Denial of credit for pretrial custody necessitated by financial inability to make bail has been held violative of the equal protection clause of the Fourteenth Amendment in numerous cases. See, e.g., *United States v. Gaines*, 449 F. 2d 143 (2nd Cir. 1971); *Steele* v. *North Carolina*, 348 F. Supp. 1023 (D.C. N.C. 1972); *State* v. *Rawlings*, 34 Ohio App. 2d 63, 295 N.E. 2d 679 (1973); *Mallory* v. *State*, 31 Ohio Misc. 113, 281 N.E. 2d 860 (1972); *Parker* v. *Bounds*, 329 F. Supp. 1400 (D.C. N.C. 1971). We find language in *Culp* v. *Bounds*, 325 F. Supp. 416 (D.C. N.C. 1971), particularly descriptive of our feelings in the matter. That court, following the same guideposts we find in United States Supreme Court decisions, said:

> * * * the state's refusal to give Culp credit for pre-trial detention is an unconstitutional discrimination on the

basis of wealth prohibited by the Fourteenth Amendment. As outlined above, wealthy defendants (except where no bail is allowed) are able to remain out of prison until conviction and sentencing; the poor stay behind bars. While such a situation may often be compelled by the present (especially state) bail procedures, it should not be compounded by refusal to credit prisoners in Culp's situation with time incarcerated prior to trial and commitment. Such a distinction, which, in effect, provides for differing treatment on the basis of wealth, is unconstitutional absent some "compelling governmental interest."

We find no merit in the argument sometimes advanced that pre-sentence jail time should not be credited because it is not "punishment." Whatever it may be called, it is certainly a deprivation of liberty, which, in itself, is punishment to most human beings. We should not like to try to convince those held in such confinement, along with those undergoing punishment, of the soundness of such an argument. We reject it, as other courts have. *In re Young*, 32 Cal. App. 3d 68, 107 Cal. Rptr. 915 (1973); *Parker* v. *Bounds*, 329 F. Supp. 1400 (D.C. N.C. 1971).

We think the result appellant seeks would be clearly indicated if he had been held in confinement before trial solely because of his indigency. But this is not the case. Although petitioner argues vigorously that discrimination in the matter of jail-time credit because of indigency violates the Fourteenth Amendment, he does not even allege that he was unable to make bail because of indigency. The record clearly reveals that this was not the case. He was arrested, informed against and tried upon a charge of first degree murder. This offense was not bailable until the decision in *Furman* v. *Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), exactly one year after Smith's trial,[1] unless the circuit court had been satisfied, after a hearing, that the proof of first degree murder was not evident and the presumption not great. Constitution of Arkansas, Art. 2, Sec. 8; *Fikes* v. *State*, 221 Ark. 81, 251 S.W. 2d 1014; *State* v. *Williams*, 97 Ark. 243, 133 S.W. 1017; *Parnell* v. *State*, 206 Ark. 652, 176 S.W. 2d 902;

---

[1]See *Upton* v. *Graves*, 255 Ark. 516 (November 13, 1973).

*Carr* v. *State,* 93 Ark. 585, 122 S.W. 631. See also, *Bass* v. *State,* 29 Ark. 142.

The official accusation by information of the prosecuting attorney was sufficient justification for holding appellant in custody until his entitlement to bail was established. *Fikes* v. *State,* supra. The filing of the information raised a presumption of appellant's guilt for the purpose of arrest, detention and trial sufficient to preclude him from the right of bail until it was rebutted by an affirmative showing on his part. *State* v. *Williams,* supra. Since the offense was not bailable, there was no invidious discrimination against Smith because of indigency, and the authorities hereinabove cited lend him no aid.

He argues, however, upon the authority of *Ham* v. *North Carolina,* 471 F. 2d 406 (4th Cir. 1973); *White* v. *Gilligan,* 351 F. Supp. 1012 (1972); and *Workman* v. *Cardwell,* 338 F. Supp. 893 (1972), that he is, nevertheless, entitled to the credit. We do not agree. We do not consider the district court cases as authoritative. But in *Workman* the result was reached solely on the ground of the indigency of the petitioner. Even so, that portion of the ruling was vacated on appeal. *Workman* v. *Cardwell,* 471 F. 2d 909 (6th Cir. 1972). In *White,* the district court was unable to find any legitimate state interest in an Ohio statutory scheme under which those who remained free prior to conviction received full credit for all periods of confinement while those held in jail prior to conviction did not. The action was heard by a three-judge, district court on a petition for declaratory and injunctive relief on behalf of a class of all inmates of the Ohio penal system who remained in jail prior to trial because of financial inability to post bail bonds. The petitioners asserted that the statutes were unconstitutional because of discrimination against the poor in violation of the equal-protection clause of the Fourteenth Amendment. A due process contention was rejected. Credit was allowed in *Ham* only on the basis of the prisoner's indigency. Appellant can take no comfort from the holding there that a statute providing for pre-sentence jail time credit in cases tried after its effective date was palpably unconstitutional because of its own limitation to prospective application.

We cannot honor this argument. The Supreme Court of

the United States has clearly recognized that classifications in this regard based upon legitimate state purpose may be valid as against assertions of violation of the Fourteenth Amendment. *McGinnis* v. *Royster*, 410 U.S. 263, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1973). See also, *Culp* v. *Bounds*, 325 F. Supp. 416 (D.C. N.C. 1971), where the court emphasized the absence of a compelling state interest in the situation. There is no invidious discrimination when certain classes of offenders are held without bail for valid state purposes or where the incarceration is not, without valid reason, discriminatory against a particular category of persons. The equal protection clause does not require things which are different in fact to be treated in law as though they were the same, so states may impose special burdens upon defined classes in order to achieve permissible ends. *Rinaldi* v. *Yeager*, 384 U.S. 305, 86 S. Ct. 1497, 16 L. Ed. 2d 577 (1966). The compelling state interest in this and other capital cases which are not bailable was well articulated in *Carr* v. *State*, 93 Ark. 585, 122 S.W. 631, and reiterated in *Parnell* v. *State*, 206 Ark. 652, 176 S.W. 2d 902. We said:

> We should also not lose sight of the provision of the Constitution which declares that persons shall not be bailable in capital cases "when the proof is evident or the presumption great," and the object of bail, which is to secure the attendance of the prisoner.

> In cases where it will not in all probability be sufficient for that purpose, it should be denied, and that is in capital cases where the proof is evident or the presumption great. In such cases the temptation to forfeit the bail in preference to endangering life by a trial might be beyond resistance.

It has been recognized, at least tacitly, that a distinction may be made on the basis of offenses not bailable. See, e.g., *United States* v. *Gaines*, 449 F. 2d 143 (2nd Cir. 1971); *Parker* v. *Bounds*, 329 F. Supp. 1400 (D.C. N.C. 1971); *Culp* v. *Bounds*, 325 F. Supp. 416 (D.C. N.C. 1971). See also, *Stapf* v. *United States*, 367 F. 2d 326 (D.C. Cir. 1966). We think that the distinction between bailable and nonbailable offenses as to pretrial confinement credit is a constitutionally permissible and proper one. The reasons why one should be held in confinement

prior to trial on a nonbailable offense are the same regardless of his wealth or poverty, and the reason for such detention serves a proper state purpose.

We have given no consideration to those cases where the "double jeopardy" constitutional prohibitions have controlled, because Smith's sentence is neither a maximum nor a mandatory minimum punishment, and he, appropriately enough, did not argue that these provisions had been violated.

We find no error in the denial of appellant's petition without a hearing because the record in the case clearly shows that he was not entitled to relief. Accordingly, the judgment is affirmed.