The Honorable Jay Bradford State Senator P.O. Box 8367 Pine Bluff, Arkansas 71611
Dear Senator Bradford:
This is in response to your request for an opinion on the constitutionality of the method of distribution of Minimum Foundation Program Aid Funds to the Department of Correction School District created by A.C.A. § 12-29-301. This district is created "for the purpose of providing elementary, secondary, and vocational and technical education to all persons incarcerated in the Department of Correction facilities who are not high school graduates, irrespective of age." A.C.A. § 12-29-301(b).
As noted in your request, A.C.A. § 12-29-304 (Cum. Supp. 1991) provides that the Department of Correction School District shall share in the distribution of grants and aids from the Department of Education, but also provides that in "no case . . . shall the Minimum Foundation Program Aid funds to this district be in excess of the sixty-five percent (65%) of the average table rate as defined by the [MFPA] formula multiplied by the average daily membership and the special education add-on of the school district." A.C.A. § 12-29-304(a)(2)(A) and (B). You indicate that this statutory restriction results in a "substantial disparity in funding" of this district (as opposed to, presumably, other school districts across the state), and inquire as to whether it is unconstitutional under Arkansas Constitution, art. 14, § 1
("the State shall ever maintain a general, suitable and efficient system of free public schools . . ."); art. 2, § 2 (all men are created equally free and independent); art 2, § 3 (equal protection clause) and art. 2, § 18 (privileges and immunities clause).
It is my opinion that the method of funding of the Department of Correction School District, as set out in A.C.A. § 12-29-304, would withstand constitutional scrutiny.
It should be noted from the outset that A.C.A. § 12-29-303
provides that the students attending schools in the Department of Correction School District shall be entitled to all of the privileges provided generally to common public schools and adult education programs, provided the privileges do not conflict with state law governing the operation of the Department of Correction, or any Department rules, regulations, or policies. This provision, however, cannot be interpreted to require equal educational funding in light of the 65% limitation on MFPA found in the same statutory subchapter.
The arguments you assert are all based upon the constitutional doctrine of "equal protection of the law," or the privileges and immunities doctrine, which utilizes essentially the same legal test. It has been held that a state statute does not offend the equal protection clause merely because it favors one class of persons over another; but rather, to decide whether a statute violates the equal protection clause, a court must determine whether the classification created by the statute is rationally related to a legitimate state interest. Burris v. Sewer Imp.Dist. No. 147, 743 F. Supp. 655 (E.D. Ark. (1990). The Arkansas Supreme Court has recently upheld the "rational basis" test, and declined to adopt a "strict scrutiny" approach in determining equal protection challenges concerning educational issues.Magnolia School District No. 14 v. Arkansas State Board ofEducation, 303 Ark. 666, 799 S.W.2d 791 (1990). Thus, if any conceivable rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of utterly arbitrary and capricious government purpose and void of any hint of deliberate and lawful purpose, it will withstand an equal protection challenge. Arkansas Hosp. Ass'n. v. Arkansas State Board ofPharmacy, 297 Ark. 454, 763 S.W.2d 73 (1989).
It has been stated that:
 Since public education is not a fundamental right within the concepts relating to equal protection . . . differences in treatment of students in the educational process which differences in themselves do not violate specific constitutional guaranties, do not violate the equal protection guaranty if they are rationally related to legitimate state interests, and challenges regarding the right to an education are tested by the rational basis test. [Footnotes omitted.]
16B C.J.S. Constitutional Law, § 850 at 803.
It has also been held that the equal protection clause does not require identity of treatment. A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons "similarly circumstanced" shall be treated alike. Holland v. Willis, 293 Ark. 518, 523,524, 739 S.W.2d 529 (1987).
In my opinion, the method of funding provided for the Department of Correction School District ("DC District") is not unconstitutional because the classification and separation of DC district students for different treatment rests upon a ground of difference which bears a substantial relation to the law. The DC District students are not similarly situated with school children in other districts across the state. They have been given an opportunity for educational advancement by the grace of the legislature and in an effort to rehabilitate them from their former lives of crime. Providing a reduced level of funding for this district is based upon a real difference in circumstances and relates to the legislative objective of distributing the state's precious educational dollars as equitably as possible. It has been held that the equal protection clause does not require things which are different in fact to be treated in law as though they were the same, so states may impose special burdens upon defined classes in order to achieve permissible ends. Smith v.State, 256 Ark. 425, 508 S.W.2d 54 (1974), citing Rinaldi v.Yeager, 384 U.S. 305 (1966).
Additionally, you cite Arkansas Constitution, art. 14, § 1 for the proposition that the students in the Department of Correction School District are entitled to a "general, suitable and efficient system of free public schools. . . ." This requirement, when read in conjunction with the equal protection clause, has been interpreted to require equal educational opportunity.DuPree v. Alma School District No. 30, 279 Ark. 340,651 S.W.2d 90 (1983). Although, you note, the provision was formerly limited to persons in the state between the ages of six and twenty-one, Amendment 53 expanded Article 14, § 1 to authorize the General Assembly and/or public school districts to spend public funds for the education of persons younger than six and older than twenty-one as may be provided by law. Rather than guaranteeing an equal educational opportunity to these classes of persons, as you suggest, the amendment merely authorizes the legislature or individual school districts, to fund the education of these persons, should it choose to do so. The language of the amendment is not mandatory. It does not require the general assembly or school districts to expend any funds for education of persons in these age groups. It merely authorizes such action. It may be fairly stated therefore that the General Assembly could have chosen never to create the DC District and never to provide educational funding for the district. It therefore follows that it may determine to fund it at whatever level it deems appropriate.
Of course, if the legislature provides educational funding for the state's correctional inmates, it must provide equal educational opportunity for all inmates similarly situated with other inmates. This is a far cry, however, from a requirement of educational funding parity for inmates and school children across the state.
It is therefore my opinion that A.C.A. § 12-29-304 will withstand constitutional scrutiny.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh