John 0. Mabbach, J.
Plaintiffs, Connecticut corporations engaged in the construction and sale of condominiums situate in the State of Connecticut, commenced this action for a declaratory judgment concerning their right to place advertisements for the sale of the condominium units in New York newspapers.0 Their amended complaint specifically seeks an. adjudication interpreting article 23-A of the New York General Business Law and other laws and regulations of New York and declaring that advertising previously placed in several New York newspapers, and similar advertising, may be published without interference from the office of the Attorney-General of the 'State of New York. The complaint asserts that no “ Offering Plan” must be filed as a prerequisite to such advertising under the State laws and regulations and if so regulated it would be unconstitutional. Defendant Attorney-General has moved to dismiss *868 the amended complaint for, inter alia, failure to state a cause of action. Plaintiff has cross-moved for summary judgment. Both parties have submitted affidavits and memoranda of law. There is no material factual dispute in this matter; the cross motion shall be treated as applications for summary judgment (CPLB 3211, subd. [c]; 3212).
Plaintiffs admittedly placed advertisements in The New Yorh Times, New Yorh Lam Journal and Herald Statesman (published in Yonkers, N. Y.) on divers occasions. A copy of The New Yorh Times advertisement is attached to and made a part of the complaint. Defendant asserts, and there is no denial thereof, that plaintiffs placed advertisements in The New Yorh Times, the Westchester-Rochland Newspaper chain, and the New Yorh Law Journal on a total of 30 occasions. The circulation of these newspapers is primarily in New York. The sample advertisement attached to the complaint shows the three condominiums and includes pictures, general descriptions, phone numbers, route directions and the following copy: “ Priced from the high thirties ’ ’; and ‘ ‘ This does not constitute an offer where an offer may not legally be made The plaintiff corporations are not named; the only reference to identification of the builder is “ The USK Corporation Builders and Developers ”.
Article 23-A of the G-eneral Business Law of New York is commonly referred to as the Martin Act or the ‘1 Blue Sky Law”. This act, which regulates the sale of securities in the State in the public interest, was originally enacted by chapter 649 of the Laws of 1921, effective May 7, 1921. In 1960, the Legislature added section 352-e entitled ‘ ‘ Real estate syndication offerings ” to article 23-A (L. 1960, ch. 987). Section 352-e (subd. 1, par. [a]) which has not been materially amended, reads as follows: “ It shall be illegal * * * for any * * • corporation * * * to make or take part in a public offering or sale in or from the state of New York of securities * * * in real estate * * * including cooperative interests in realty, unless and until there shall have been filed with the department of law, prior to such offering * * * an ‘ offering statement ’ or 1 prospectus ’ * * # The circulation or dissemination of a non-firm offer (including * * * a preliminary prospectus pursuant to section ten ,(.b) of the securities act of nineteen hundred thirty-three * * *) shall not constitute making or taking part in a public offering within the meaning of this section.”
Subdivision (10) of section 77b of title 15 of the United States Code which is apparently the “ section ten (b) ” supra, includes *869 advertising in its definition of the term “ prospectus ” hut excludes that advertising which “ states from whom a written prospectus meeting * * * requirements * * * may he obtained ”. Under this Federal exclusion, the prospective purchasers of securities are afforded an avenue of complete inquiry; such ¡would not be true under plaintiffs’ interpretation of section 352-e.
Paragraph (b) of subdivision 1 details the particulars in a “ prospectus paragraph (c) of subdivision 1 requires that all advertising be “ consistent ”. Subdivisions 2, 3, 4 and 5 also concern advertising in conjunction with a filed prospectus. Subdivisions 2, 6, 7 and 8 relate to regulation and administration of the section :by the Attorney-General. Subdivision 2 specifically states: “ No offer, advertisement or sale of such securities shall be made in or from the state of New York until the attorney general has issued * * * a letter stating that the offering has been filed.” In 1964, the Legislature enacted a “ Condominium Act” (Real Property Law, art. 9-B, § 339-d et seg.-, L. 1964, ch. 82, eff. March 2, 1964). This act is only applicable to owners who if submit the same to the provisions * * * by duly executing and recording a declaration as * * * provided ” (§ 339-f). Section 339-ee provides that all properties “ submitted to the provisions of this article shall be deemed cooperative interests in realty within the meaning of section three hundred fifty-two-e of the general business law ” (see 22 Carmody-Wait 2d, New York Practice, § 138:12; 11 N. Y. Jur., Co-operatives, §§ 125-126).
Plaintiffs contend that section 352-e of the General Business Law applies only where the owners have voluntarily subjected their properties under section 339-ee of article 9-B of the Real Property Law; that condominiums in general are not included in the term “ securities ” under section 352-e of the General Business Law and that, in any event, mere advertising is not a “ public offering ” within the intendment of section 352-e (and not even a “ non-firm offer”). Plaintiffs allege, and for the purpose of these cross motions the court will accept such claims, that the advertisements were their sole contact with the State of New York.
The enactment of section 352-e “ reaffirmed existing authority that the sale of * * * securities of real estate companies are ‘ securities ’ within the purview of the Martin Act ” (Reiter v. Greenberg, 21 N Y 2d 388, 392). At the time of its passage and adoption by the Legislature, the “ condominium” form of ownership was virtually unknown in the United States. *870 A 1961 amendment to the National Housing Act authorizing FHA insurance on mortgages on condominiums provided á major stimulus to such development (see Housing Act of11961, § 234; U. S. Code, tit. 12, § 17.15y). Within two years from the enactment of section 352-e of the General Business Law, considerable attention had been given this type of ownership (see 1 Condominium Law and Practice, Rohan & Reskin, § 2.03; 50 California L. Rev., 299 et seq. [1962] at p. 301). Thus in 1960 it is not surprising that the draftsmen of section 352-e did not add the word “ condominium ” to the phrase “ including cooperative interests in realty ”.
The passage of the New York Condominium Act in 1964 further establishes the advance in popularity of this form of land development and the consequential interest by the Legislature in enacting laws to stimulate and regulate such construction and sales in New York. By its terms, the statute is clearly limited to condominiums erected on property located in the State. The legislative memorandum on the original bill fortifies this limited application (N. Y. Legis. Annual, 1964, p. 350). The following year, the Legislature added párAgraph (b) of subdivision 7 to section 352-e. Paragraph (b) of subdivision 7 gave the Attorney-General authority, at his discretion, to “ require an inspection * * * in connection with a real estate syndication, cooperative, or condominium offering, of lands and property thereon, situated outside of the state of New York, involved in such offering”. (L. .1965, ch. 37, eff. Sept. 1, 1965.)
The import of the 1965 amendment is dual fold. Whether a condominium offering is or should be construed a “ security” within the scope of a “ Blue Sky Law ”, State or Federal, has been a subject of some debate (see 50 Cal. L. Rev., supra, pp. 338-341; Condominium Law and Practice, supra, §§ 3.05, 18.01 et seq.\ Securities Act of 1933 [U. S. Code, tit. 15, § 77a et seq.] —Release No. 5347 [Jan. 4, 1973]; 53 C. J. S., Licenses, § 76; 11 U. of Cal. L. A. L. Rev., 1, 7-8). As of 1972, condominium offerings were regulated by various means in eight States and Puerto Rico (Condominium Law and Practice, '§ 3.05, supra). The passage of paragraph (b) of subdivision 7 in 1965 unequivocally clarified the status of the New York law thereto; by adding the word “ condominium” to the statute and empowering the Attorney-General to investigate condominiums “ situated outside of the state of New York ”, the Legislature updated the language to include condominiums and dispelled any ambiguity as to its application to projects outside of the State. New *871 York may well impose the most stringent requiremehts on a developer of condominiums; however, the law clearly applies here to all condominiums, regardless of the structure and variables of any particular development.
The term “ public offering” is not defined in section 352-e (subd. 1, par. [a]). Similarly, the phrase “public offering” is not defined in the Federal “Blue Sky Law” (IT. S. Code, tit. 15, § 77a et seq., “ Securities Act of 1933 ”) (cf. N. J. Stat., § 45:22A-1 et seq. [L. 1969, ch. 215] defining “ offer ” as “ any inducement ” (§ 45:22A-2). These words were analyzed in a recent annotation in 6 ALB Fed. 536 et seq.) relevant factors given there include the “ nature, scope, size, type and manner of the offering ” (p. 544). Although the New York statute has been extant for well over a decade, there has been no decisional legal interpretation of these words, or of the later qualifying phrase “non-firm offer” (subd. 1, par. [a], last sentence). The Attorney-General was authorized under subdivision 6 of section 352-e to promulgate rules and regulations; pursuant thereto (and to the Condominium Act) the Attorney-General adopted certain condominium regulations (13 NYCBB 19.1 et seq.). These regulations pointedly include condominiums situated outside of New York (e.g., 19.2 [b][2][i], [b][2][vi], [xiv], [xv], [xvii] ; 19.3 [b] [1]). The Attorney-General asserts that since 1968 sponsors of 87 out-of-State condominiums, selling for more than $600 million (including 19 in Connecticut valued in excess of $79 million) have complied with section 352-e and these regulations. This interpretation of the law, which is consonant with a rational analysis, must be accorded great weight (Matter of Marsh [Catherwood], 13 N Y 2d 235, 239; Matter of Great Eastern Liq. Corp. v. State Liq. Auth., 30 A D 2d 307, 309, affd. 25 N Y 2d 525). Similarly, voluntary compliance by the building community of the magnitude involved, coupled with the patent absence of litigation challenging the Attorney-General’s authority, is of considerable significance. If a “ mere advertisement ” is not a “ public offering”, there would be no rational inducement for any out-of-State developer to file a “prospectus” and the citizens of New York would have no protection against an unscrupulous promotion by out-of-State developers. Where “ condominium units * * * will be offered to non-residents, it is often desirable to qualify ]n surrounding states, if for no other reason than to be able to place advertisements in the newspapers in those states ”. (Condominium Law and Practice, supra, § 3.05, p. 3-8). The court must conclude that the advertising in question was a *872 “ public offer ” (and not a “ non-final offer ”) within the scope of contemplation, of section 352-e of the General Business Law and that it was proscribed under section 352-e. Further, such a statute and regulations are proper constitutional vehicles for protecting the general public of the State (Travelers Health Assn. v. Virginia, 339 U. S. 643).
Summary judgment is granted defendant in accordance with this decision. Submit judgment on notice declaring the rights of the State of New York consistent herewith.