Nathaniel T. Helman, J.
On January 25, 1975, the Attorney-General obtained an ex parte order from a Justice of this court requiring the respondents, three Florida-based corporations and nine Florida residents to appear for deposition in New York, such order including injunctive provisions restraining transfers or dispositions of any interest in the properties involved. The corporate respondents are engaged in the business of developing and selling condominiums in Florida. Respondents’ present application is to vacate in its entirety the said order upon several grounds including
(1) lack of notice or provision for a hearing;
*419 (2) lack of jurisdiction of the subject matter as well as the persons of the individual respondents, and for other relief;
(3) lack of jurisdiction over the corporate defendants, one a Delaware corporation and the others, Florida-based subsidiaries, each having no office or agent in New York.
In a previous proceeding involving Cenvill Communities, Inc., one of the respondents, on the basis of a charge by the Attorney-General of violations of section 352-e et seq. of the General Business Law, Cenvill agreed to "discontinue all acts and practices in violation of Article 23A,” and further agreed that it would not "offer condominiums within and from the State of New York unless and until said offering has first been registered with the Dep’t of Law.” Since that time the Attorney-General has obtained testimony from persons solicited through the mail and other forms of advertising in New York, that respondents have participated in the offering of sales agreements into New York involving the negotiation and promotion of sales of condominiums. On November 18, 1974, he caused a subpoena duces tecum to be served on Cenvill requesting the production of several documents, which were not produced. Having failed in further discussions with respondents, to obtain formal affidavits in lieu of the documents requested because of the limitations and conditions imposed by respondents, he applied for an order of this court pursuant to section 354 of the General Business Law. It is that order to which the present application is addressed.
Section 354 of the General Business Law, captioned "Examination of witnesses and preliminary injunction” provides a broad discretion in the Attorney-General to take proceedings involving offering plans and to police fraudulent practices. His right to examine witnesses may be based on information and belief and he may request "such preliminary injunction or stay as may appear to such justice to be proper and expedient.” Unlike the statutory scheme adopted by other States, New York places the sale of condominium units under the provisions of its securities law. Thus, the Martin Act (General Business Law, §§ 352-359h) is the most extensive of the nation, and additional substantive protection is afforded the unit owner by the State’s Condominium Act (Real Property Law, §§ 339d-339ii).
Of significance is the fact that the Martin Act provisions apply equally to property located within and without the State provided it is offered for sale in New York. The special *420 provisions of section 352-e of the New York General Business Law make it illegal "to make or take part in a public offering or sale in or from the state of New York” of such offerings. To insure that proper disclosures are made, extensive and detailed regulations have been promulgated by the Attorney-General governing the content of the offering plan. A broker-dealer’s license must be obtained by the selling agent and any salesman to be employed. And where, as here, there has been a prior "assurance of discontinuance,” by respondents, subdivision 15 of section 63 of the Executive Law provides that "Evidence of a violation of such assurance shall constitute prima facie proof of violation of the applicable law in any civil action or proceeding thereafter commenced by the attorney-general.”
A recurrent complaint of condominium owners is the practice of developers entering into long-term recreational leases and management contracts. One of the complaints of the Attorney-General is that respondent Cenvill failed to adequately disclose material facts to New York purchasers including the terms of a 99-year lease with a handpicked board of managers for the maintenance of the recreational areas which might result in excessive costs for the use of these facilities. In similar vein, it is charged that a long-term management contract was negotiated with sponsor-affiliated companies. The condominium concept is that of a purchaser who acquires his residence in fee simple and in addition is allowed to acquire the right to use the common facilities of the development. A developer’s continuing hold on the condominium by means of long-term contracts is inconsistent with the spirit of the Condominium Act. It is by now generally known that the New York Attorney-General’s office looks critically on management contracts in excess of a few years as well as on recreational leases. Additionally, the Attorney-General is critical of the respondent’s provisions for "guaranteed maintenance fees” for five years as well as of the omission to disclose that Century Village was located in an area designated as a flood-hazard district by the Federal Government.
It is important to note that the broad powers granted by the New York Legislature to the Attorney-General in the regulation of condominiums are not restricted to the filing of offering plans. By the Martin Act, he is given authority to curb "fraudulent practices”. These involve knowledge of improper methods of operations, with a concommitant • duty to make *421 reasonable effort to ascertain the facts. Embraced within the statutory term "fraudulent practices” are "devices and schemes, deceptions, concealments and suppressions”. It is in this context that the word "offering” must be construed. While the statute provides that the circulation of a "non-firm offer” does not constitute a public offering, that term has been construed to include an offer of sale, a form of promotion, as well as an advertisement and distribution of securities. Thus, the learned opinion of Mr. Justice Marbach in the case of Ledgebrook Corp. v Lefkowitz, (77 Misc 2d 867, 871) pointed out that "if a mere advertisement” is not a "public offering” there would be no rational inducement for any out of State developer to file a "prospectus” and the citizens of New York would have no protection against an unscrupulous promotion by out of State developers.
The Attorney-General asserts that respondents regularly mail "News Letters” and brochures into New York State, all of which contain advertisements for the sale of condominium units including prices, description of facilities, maintenance guarantees and coupons with which to send for additional information. It is clear from the affidavits and exhibits that respondents were soliciting purchases in New York on a regular basis and that sufficient has been shown to justify the request of the Attorney-General for a stay of further activities. The failure to file an offering statement which could be made available to each purchaser as well as the failure of Cenvill to comply with the requests for documentary response to a subpoena provide ample support for a stay of further activities in New York. The provisions of the General Business Law which authorize a preliminary injunction or stay where "proper and expedient,” do not limit the court’s powers to provide such relief ex parte where the circumstances require. Special Term had before it sufficient evidence of a failure to register, violation of the Martin Act, and a record of prior noncompliance, to support an ex parte stay of activities. The correctness of its determination in that regard is only bolstered by the supplemental affidavits which have been filed on this application.
That only a small number of complaints have been received by the Attorney-General is of little significance since as he points out many brochures, advertisements and news letters may well have been distributed which have not resulted in the filing of complaints. Respondents appear to rely upon Fuentes *422 v Shevin, (407 US 67) for their contention that a preliminary hearing was required under section 354 of the General Business Law preliminary to the issuance of an ex parte order. That case involved the seizure of a chattel in a replevin proceeding where there was no judicial supervision over the issuance of a writ. While the later case of Mitchell v Grant Co. (416 US 600) has modified if not overruled the Fuentes decision by upholding an ex parte seizure order because it was issued under the supervision of a judicial officer, those cases are not analogous to the present situation.
Here we are dealing with a broad mandate of power specifically assigned to the Attorney-General by the Legislature in a specialized industry, arising out of the necessity for protecting New York citizens from the danger of fraudulent practices which might create irreparable injury. Thus in Caldwell v Sioux Falls Stock Yards Co. (242 US 559) the Supreme Court upheld suspension of a sale of securities under the powers vested in the Attorney-General of South Dakota under its statute. Similarly in Bradford Audio Corp. v Pious (392 F2d 67) an ex parte order was issued by a Justice of this court, pursuant to the provisions of section 354 of the General Business Law restraining transfers of the corporate assets. When the claim of denial of due process was thereafter asserted in the Federal courts, the Circuit Court of Appeals for the Second Circuit held that there was no deprivation of due process involved by the making of an ex parte order. Cases cited by respondents involving litigation between private parties are inapposite since the statutory powers of the Attorney-General in this regard like those of the Federal Securities & Exchange Commission are broad enough to permit a suspension of trading summarily when the public interest so requires.
The further jurisdictional questions raised by respondents in connection with the service of process can be resolved by reference to section 352-b which states that nonresident broker-dealers, salespersons and principals of nonresident broker-dealers who do business in this state may be served with process. We are not concerned here with the term "doing business” as those words are defined in CPLR 301, 302. In Matter of La Belle Creole Int. v Attorney-General (10 NY2d 192, 197-198) the court said:
" 'What is necessary to * * * maintain a suit by a creditor’, it has been said, is not 'determinative when the state seeks to *423 regulate solicitation within its borders’. (Travelers Health Assn. v Virginia, 339 US 643, 653, per Douglas, J. concurring.)
Where the purpose of the proceeding is to protect the citizens of the State from potentially dangerous consequences, less is required than might otherwise be the case.”
It may be noted that Cenvill is listed on the American Stock Exchange and that section 352-a of the General Business Law provides that where securities of a foreign corporation are offered for sale the Attorney-General may require the production of verified written statements as well as the appearance of its officers.
Condominium laws exist in every State of the United States, and regulation of the creation and sale of unit interests comes under the real estate laws or the security laws of the various States. New York has chosen the securities form of regulation. Irrespective of which method is used, it has been applied to instate and out-of-State condominiums. The Attorney-General is mandated under article 23-A of the General Business Law to make an examination of properties outside of the State of New York that may be the subject of an offering. The Martin Act should be liberally interpreted to effect its broad purposes. So, also, the term "Offering” should be broadly construed so as to embrace each of the steps leading to an ultimate sale of a unit. The mailing of a contract for the sale of an interest in property to a New York citizen where the property is subject to governmental regulation provides a basis for the exercise of jurisdiction.
In denying respondent’s motion, the court has given consideration to the request contained in respondents’ application for a protective order, and both applications will be considered together. The witnesses subpoenaed by the Attorney-General will not be required to appear together on the same day for a deposition. The order to be entered herein may provide for a spacing of three days between the completion of each examination and the commencement of the next, unless the parties by mutual agreement submit another formula for the taking of the depositions. The court does not regard the Attorney-General’s demand for the production of a verified statement setting forth the names and addresses of New York State residents who were solicited, inquired about or bought units, as a hardship. A reasonable time, however, should be afforded to respondents for the submission of such lists and the order *424 may so provide. Furthermore, the demand of the Attorney-General contained in paragraph 6 of the subpoena should be complied with, respecting that portion thereof which concludes with the words "applicable to sales of units to residents of the State of New York.” The Attorney-General may, however, seek other information requested in paragraph 6 by separate subpoena in the event that it should become necessary to do so after the completion of the first examination. A reasonable period of time for the supply of this information should likewise be provided for, in the order to be entered herein. The request of respondents for a limitation of their production of documents to those situations wherein the contract of sale was signed by the purchaser in the State of New York is denied. Requests for reimbursement for the production of the documentary evidence are likewise denied.
The motion to vacate the ex parte order of January 25, 1975 is denied. The application for a protective order is granted only to the extent herein indicated. Settle order in accordance with the foregoing, with provision for an authorization to respondents to complete and perform any contracts entered into prior to February 10, 1975, in accordance with the oral directions of this court made on said date.