OPINION OF THE COURT
Richard W. Wallach, J.
This motion is brought by the Attorney-General of the State of New York seeking a preliminary injunction barring the respondents from selling “cooperative interests” in 137 West Broadway, New York, New York, and from evicting any persons currently residing in the premises. This motion and the petition upon which the action is based are brought by the Attorney-General pursuant to article 23-A of the General Business Law (hereinafter Martin Act) which prohibits the public offering or sale of securities, including co-operative interests in realty, in the absence of a prospectus filed with the Department of Law of the State of New York.
Respondents have cross-moved to dismiss the petition on the grounds that it fails to state a cause of action, because the Attorney-General has failed to show any proof *47 of a public sale or offering of co-operative interests in realty.
For purposes of injunctive relief under the Martin Act, because it is remedial in nature, the Attorney-General need only show prima facie that the respondents’ actions fell within the purview of the act and that, as such, they violated the act (People v Tellier, 7 Misc 2d 43).
The purpose of the Martin Act is to protect the public from fraudulent practices. The act throughout refers to “public offerings” and although private offerings are not explicitly exempt, on the familiar principle of “expressio unius est exclusio alterius” the Martin Act is not intended to regulate private offerings. “Since the statute makes it unlawful to sell securities to ‘the public’ without first having filed a registration statement, the words cannot be elided from the statute as surplusage and must be considered as being there for the purpose of describing or limiting to whom sales are made or offered. Giving it its natural and ordinary popular meaning, the phrase ‘the public’ includes all of the people and is not exclusive of a portion of the population” (22 Carmody-Wait 2d, NY Prac, § 138:10; People v Ruthven, 160 Misc 112).
To maintain the action the Attorney-General must show that the respondents’ actions constituted a public offering before the court may consider the merits of a preliminary injunction requested in accordance with the Martin Act provisions. Although the New York statute was enacted in 1960, as to “public offering”, there has been “no decisional legal interpretation of these words” (Ledgebrook Corp. v Lefkowitz, 77 Misc 2d 867, 871) and courts frequently refer, by analogy, to Federal case law on this issue.
The distinction between public and private offerings is considered in Securities & Exch. Comm. v Ralston Purina Co. (346 US 119,127), wherein the United States Supreme Court stated, “The focus of inquiry should be on the need of the offerees for the protections afforded by registration”. Thus, if the offerees were in need of the act’s protection and they did not have access to information in the absence of a filed prospectus, the offering would be deemed a public one.
*48 The Attorney-General has not demonstrated here that the offerees were in need of the Martin Act’s protection, or that they did not have access to necessary information in the absence of a filed prospectus. At all relevant times the offerees were represented by legal counsel, and they have voiced no complaints concerning the offering.
In determining whether an offer is public or private, courts have often rested upon four major factors (Ledgebrook Corp. v Lefkowitz, supra): (1) number of offerees and their relationship to each other and to the issuer, (2) number of units offered, (3) size of the offering and (4) the manner of offering (type and extent of advertising).
The Martin Act and the courts have explicitly recognized the significance of the number of offerees. Section 352-g of the Martin Act entitled “Exemptions” states, “The attorney'1 general, upon application, may exempt from the provisions of section three hundred fifty-two-e * * * any offerings of' securities (1) made to persons not exceeding forty in number”. The United States District Court for the Southern District of New York noted that “while numbers [of offerees] might not be decisive * * * they are obviously relevant in applying the legislative purpose ‘to exempt isolated transactions from the onerous burdens of registration requirements’ ” (Hirtenstein v Tenney, 252 F Supp 827, 830).
The Attorney-General mistakenly relies upon that aspect of Mr. Justice Clark’s opinion in Securities & Exch. Comm. v Ralston Purina Co. (supra), which indicates that the number of offerees involved is not itself determinative of whether an offering is “public” within the meaning of the Securities Act of 1933. At issue in Ralston Purina was an offering to large groups of “key employees”. The Supreme Court held that the private placement exemption from registration could not deprive corporate employees, as a class, of the safeguards of the Securities Act. While Justice Clark’s opinion emphasizes the remedial purpose of the act and the lack of information available to the employees, nothing in that opinion eliminates consideration of the size of the offering class as a significant test of the private placement exemption.
*49 Courts have also considered the relationship of the offerees to each other and to the issuer to determine whether the nature of the offering was public or private. In Woodward v Wright (266 F2d 108, 115), the Tenth Circuit found a private offering existed where “[t]he whole transaction was a closely knit arrangement among friends and acquaintances, and was conducted on a personal basis”, and the same court held that evidence of close relationships and past dealings refuted a claim that there was a public offering (Garfield v Strain, 320 F2d 116).
The affidavits show extensive relationships and past dealings between the offerees and the issuers. The parties had been neighbors and friends over the course of several years. The small number of offerees, their close relationship, the limited size of the offering, and the absence of any advertising, all are indicia of a private offering.
The Attorney-General urges that Federal law has defined the essential elements of a public offering simply to be: (1) no registration statement was in effect as to the securities; (2) respondent sold or offered to sell securities; and (3) use of interstate transportation or communication or of mails was made in connection with the solicitation or sale (Securities & Exch. Comm. v Continental Tobacco Co. of S. C., 463 F2d 137; Hill York Corp. v American Int. Franchises; 448 F2d 680; Doran v Petroleum Mgt. Corp., 545 F2d 893). There is no evidence of interstate solicitation here; on the contrary one of the offerees actually initiated the transaction by approaching the issuer. The Attorney-General has failed to present proof of a public offering even along the truncated Federal guidelines he urges as applicable.
The Attorney-General’s important powers under the Martin Act are not lightly to be cast aside. This importance is shown in such cases as Matter of Attorney-General of State of N. Y. (Cenvill Communities), (82 Misc 2d 418), where a filed prospectus would have alerted an unsuspecting public to the undisclosed fact that condominiums in which they had invested were located in a Federally designated flood hazard area. But the resources of that office are not to be dissipated in a case such as this, where the handful *50 of offerees were not in need, nor did they desire, the protection of the Martin Act. Because the Attorney-General has failed to present a prima facie showing that respondents’ transaction was a public offering, the court finds it unnecessary to determine whether the specific transaction would constitute a “cooperative interest in realty” so as to fall within the class of regulated public offerings.
For the foregoing reasons, the Attorney-General’s motion for a preliminary injunction is in all respects denied, and the respondents’ cross motion to dismiss the petition is granted.