**Jacob I. SOPHER and J.I. Sopher & Co., Inc., Plaintiffs,**

v.

**Robert ABRAMS, as Attorney General of the State of New York, Defendant.**

**No. 82–CV–568.**

United States District Court, N.D. New York.

Aug. 30, 1982.

Stroock & Stroock & Lavan, Richenthal, Abrams & Moss, Sp. Counsel, New York City, Joseph A. Martino, Sp. Counsel, Clifton Park, for plaintiffs; Joseph L. Forstadt, William J. Robbins, Fred Hodara, Arthur Richenthal, New York City, of counsel.

Robert Abrams, Atty. Gen., New York City, pro se; Joel Graber, James M. Morrissey, Asst. Attys. Gen., New York City, of counsel.

MEMORANDUM–DECISION and ORDER

MINER, District Judge.

I

In this action plaintiffs, Jacob I. Sopher and J.I. Sopher & Co., Inc., seek to perma-

nently enjoin defendant Robert Abrams, Attorney General of the State of New York, from requiring disclosure, in documents distributed to the public in connection with the offering and sale of real estate securities, of the fact that the Attorney General has commenced a civil proceeding against plaintiffs. The complaint is predicated upon 42 U.S.C. § 1983 and jurisdiction is conferred by 28 U.S.C. §§ 1343(a)(3) and (a)(4). Before this Court is plaintiffs' application for a preliminary injunction. Fed.R.Civ.P. 65(a).[1]

## II

Plaintiff J.I. Sopher & Co., Inc. (hereinafter "Sopher")[2] has been a licensed real estate brokerage firm since 1965, engaging in brokerage relating primarily to the rental of apartments. Sopher is presently located at 425 East 61st Street, New York, New York, where an "Exhibition Hall of Apartments" is maintained. This exhibition contains a display of models, pictures and other information regarding rental apartments in various buildings throughout New York City. (Affidavit of Jacob I. Sopher, ¶ 3). Prospective tenants visit the Exhibition Hall, discuss their rental requirements with a licensed real estate broker or salesperson, and, if they so desire, are escorted to various apartments. If and when an apartment is leased through Sopher's efforts, the tenant is charged a broker's fee pursuant to a written agreement. *Id.* at ¶ 4.

In addition to its activities as a broker of rental apartments, Sopher frequently has acted as the selling agent or managing agent in connection with the conversion of apartment buildings to cooperative ownership. Such conversions are regulated by the Attorney General pursuant to the Martin Act, New York General Business Law § 352 *et seq.*

On March 3, 1982, the Attorney General commenced a proceeding in the Supreme Court, New York County, entitled *State v. Jacob I. Sopher and J.I. Sopher & Co., Inc.* (Index No. 40812/82). The petition, consisting of twelve causes of action, involves claims that Sopher fraudulently collected improper commissions upon the rental of certain apartments, including those buildings which it managed, in violation of New York Executive Law § 63(12). The petition seeks injunctive relief and restitution of those brokerage fees allegedly improperly collected by Sopher.

Since the commencement of the state court proceeding against Sopher, the Attorney General has required that the pendency of that proceeding be disclosed in all offering plans for cooperative conversions in which Sopher is designated as the selling or managing agent.[3] The Attorney General alleges that, with respect to all offering plans submitted for filing prior to March 31, 1982, such disclosure has been required pursuant to regulations codified in Title 13, New York Code of Rules and Regulations ("NYCRR"), Part 17. The Attorney General further alleges that, with respect to offering plans submitted after March 31, 1982, such disclosure has been required pur-

---

1. Defendant has submitted a "cross-motion" to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). However, since this motion was not made in conformity with requirements of Fed.R.Civ.P. 6(d) and Northern District of New York Local Rule 9(c), the papers submitted in support of defendant's motion have been considered only as papers submitted in opposition to plaintiffs' preliminary injunction application.

2. Plaintiff Jacob I. Sopher is currently the president of the corporation.

3. The specific legend which the Attorney General insists be included in a cooperative offering plan for which Sopher is designated as a selling or managing agent reads as follows:
   *Selling Agent*

The Selling Agent will be J.I. Sopher & Company which is a major developer and sales agent in New York City.

In March 1982 the Attorney General of the State of New York brought an action in which it was alleged that the Selling Agent collected improper rental commissions while acting in its capacity as managing agent of certain rental buildings. The Attorney General asked for injunctive relief, preventing illegal brokerage activities and restitution of fees improperly collected by the Selling Agent. The Selling Agent has contested the action.
Affidavit of Jacob I. Sopher, ¶ 11.

suant to newly issued regulations which are codified in 13 NYCRR, Part 18.

Sopher alleges that the disclosure requirement of 13 NYCRR § 17.2(b)(xx) is unconstitutional on its face under the Equal Protection Clause of the fourteenth amendment in that the regulation requires disclosure of only pending or "existing lawsuits" and does not require the disclosure of lawsuits which have been adjudicated. Therefore, Sopher contends, the regulation lacks a "rational basis" enabling it to withstand a fourteenth amendment challenge. Sopher further alleges that the Attorney General has selectively and discriminatorily enforced the disclosure requirement against Sopher, in violation of the Equal Protection Clause, and that the Attorney General, by requiring disclosure of the state court proceedings, is attempting to force Sopher to settle that lawsuit, in violation of the Due Process Clause of the fourteenth amendment.

### III

■ In this Court a party seeking a preliminary injunction must make a clear showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982); *Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 78–79 (2d Cir.1981). A preliminary injunction is an "extraordinary and drastic remedy which should not be routinely granted" except upon a clear showing that the movant has carried its heavy burden. *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.,* 638 F.2d 568, 569 (2d Cir.1981); *Beech-Nut, Inc. v.*

*Warner Lambert Co.,* 480 F.2d 801, 803 (2d Cir.1973). Moreover, where granting a preliminary injunction would adversely affect the "public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Yakus v. United States,* 321 U.S. 414, 440, 64 S.Ct. 660, 674, 88 L.Ed. 834 (1944); *New York Pathological and X-Ray Laboratories, Inc. v. Immigration and Naturalization Service,* 523 F.2d 79, 81 (2d Cir.1975). This court believes that plaintiffs' application for a preliminary injunction should be denied, since, regardless of whether irreparable harm has been demonstrated, plaintiffs have failed to meet the burden of demonstrating the last prong of this Circuit's preliminary injunction test.[4]

### IV

■ The Equal Protection Clause commands that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas,* 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940). The initial discretion to determine classifications resides with state legislatures and they "must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." *Plyler v. Doe,* —— U.S. —— at ——, 102 S.Ct. 2382 at 2394, 72 L.Ed.2d 786 (1982). Therefore, in applying the Equal Protection

---

**4.** Sopher has established that it has lost the accounts of at least three sponsors due to the Attorney General's disclosure requirement. Affidavit of Jacob I. Sopher, sworn to August 6, 1982, ¶¶ 2–5. Since Sopher has demonstrated actual monetary loss, and since a damage award is not available against the state due to the eleventh amendment's proscription against such awards, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), this Court believes there is a sufficient showing of irreparable harm necessary to comply with the first prong of the Second Circuit preliminary injunction test. *See, e.g., KMW International v. Chase Manhattan Bank, N.A.,* 606 F.2d 10, 14–15 (2d Cir.1979).

Clause "to most forms of state action, we ... seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose." *Id.*

The standard of review, then, for state economic regulations such as those involved here,[5] is whether there is a "rational basis" for the classification in question. *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979); *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). This rational basis test requires that legislative action be rationally related to the accomplishment of a legitimate state purpose. First, the challenged legislation must have a legitimate public purpose based on promotion of the public welfare, health or safety. *See, e.g., Rinaldi v. Yaeger,* 384 U.S. 305, 309–10, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966). Second, the act taken must bear a rational relation to the end it seeks to further. "Put another way, a statutory classification such as this should not be overturned unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Barry v. Barchi,* 443 U.S. 55, 67, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979), quoting *Vance v. Bradley, supra,* 440 U.S. at 97, 99 S.Ct. at 942. *See, e.g., Griswold v. Connecticut,* 381 U.S. 479, 505–07, 85 S.Ct. 1678, 1693, 14 L.Ed.2d 510 (1965) (White, J., concurring).[6]

Here, plaintiffs' Equal Protection Clause challenge involves certain Martin Act regulations. The Martin Act, New York General Business Law § 352 *et seq,* originally promulgated in 1921, is a "Blue Sky Law" whose purpose is to prevent all types of fraud in connection with the sale of securities and commodities and to defeat economically unsubstantial and visionary schemes in relation to sales whereby the public is fraudulently exploited. *See, e.g., Charles H. Greenthal & Co., Inc. v. Lefkowitz,* 32 N.Y.2d 457, 346 N.Y.S.2d 234, 299 N.E.2d 657 (1973). The Act is not directed primarily to the punishment of the offender or the regulation of private offerings, but rather to the protection of the public to a greater degree than the protection provided by an action for fraud. *People v. Michael Glenn Realty Corp.,* 106 Misc.2d 46, 431 N.Y.S.2d 285 (N.Y.Sup.Ct.1980). Since the statute is considered remedial, rather than penal, in nature, it has generally been liberally construed. *People v. Lexington Sixty-First Associates,* 38 N.Y.2d 588, 381 N.Y.S.2d 836, 345 N.E.2d 307 (1976).

Section 352–e(1)(a) of the Act prohibits any person or association from offering for sale to the public securities consisting "primarily of participation interests or investments in one or more real estate ventures, including cooperative interests in realty" unless there has been filed with the Attorney General, prior to the offering, a written statement or "prospectus" which contains certain information contained in § 352–e(1)(b) including:

> [S]uch additional information as the attorney general may prescribe in rules and

---

**5.** Plaintiffs do not allege that "fundamental rights" arising under the Constitution or invidious discrimination involving "suspect classes" are implicated in the state's regulatory scheme. Therefore, this Court is not required to implement the more restrictive "strict scrutiny test." *See San Antonio School District v. Rodriguez,* 411 U.S. 1, 28, 93 S.Ct. 1278, 1293, 36 L.Ed.2d 16 (1973); *Graham v. Richardson,* 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971). *See also Harper v. Virginia Bd. of Elections,* 383 U.S. 663, 667, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169 (1966); *Reynolds v. Sims,* 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964); *United States v. Carolene Products Co.,* 304 U.S. 144, 152–153, n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938). Nor is this a case where "intermediate" scrutiny, the so-called "middle-tier" test, is applicable. *See Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

**6.** Moreover, even if plaintiffs introduce evidence supporting their claim that the regulatory scheme is irrational, they cannot prevail so long as "it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable." *United States v. Carolene Products Co., supra,* 304 U.S. at 154, 58 S.Ct. at 784.

regulations promulgated under subdivision six hereof as will afford potential investors, purchasers and participants an adequate basis upon which to found their judgment and shall not omit any material fact or contain any untrue statement of material fact.

N.Y.Gen.Bus.Law § 352–e(1)(b). Section 352–e(6) authorizes the Attorney General to adopt or rescind suitable regulations to carry out the provisions of this section.

In 1962 the Attorney General promulgated detailed regulations concerning cooperative apartment offerings. The regulations, as amended, are codified as Part 17 of Title 13, NYCRR. The substantive disclosure requirements for all offering plans or prospectuses are set forth in 13 NYCRR § 17.2. Section 17.2(b)(2)'s basic thrust is that the offering plan must include a full disclosure of all material facts,[7] and the section specifies twenty-seven specific matters which must be disclosed in every offering plan. Subsection 17.2(b)(2)(xx), the provision challenged by plaintiffs at bar, provides that, "[a]ny existing law suits or other proceedings against the cooperative organization, any promoter, the managing agent, the sales agent or any person or firm connected with the offering, which could materially affect this offering" must be included in the offering plan.

■ Sopher argues that the regulatory scheme, in particular 13 NYCRR § 17.-2(b)(2)(xx), is unconstitutional on its face and lacks a rational basis, since the regulations involved require only the disclosure of "existing" or pending lawsuits, and not lawsuits which have been adjudicated and have resulted in the imposition of civil liability on promoters, managing agents or other agents or upon other persons or firms connected with the offering. Information about adjudicated cases, Sopher contends, is certainly information which potential investors need in order to have "an adequate basis upon which to found their judgment. . . ." N.Y.Gen.Bus.Law § 352–e(1)(b). Accordingly, Sopher alleges that the regulation lacks a rational basis.

It is beyond dispute that the Martin Act, and the above mentioned regulations promulgated thereunder, do indeed have a rational and legitimate purpose based on promotion of public welfare. The statute and its implementing regulations require the disclosure of material facts behind securities transactions and thereby lessen the danger that the public will enter into fraudulent transactions. Moreover, assuming *arguendo* that the regulatory scheme mandates only the disclosure of pending lawsuits, this Court believes that the questioned regulation is rationally related to that legislative purpose.

Pending litigation is not necessarily, in New York practice, a matter of public record.[8] Nor is ongoing litigation a matter known to the Attorney General when he is not a party. In contrast, actions which have resulted in a final order or judgment are a matter of public record, since they have been docketed and perhaps even published. Thus, concluded matters are ascertainable by the public, whereas disclosure of pending or ongoing litigation by the sponsor may be a necessity to further the ends of the Martin Act.[9]

---

7. 13 NYCRR § 17.2(b)(2) provides in part:

Each offering should contain a fair summary of material relevant to the particular offering. Each offering plan should be viewed with respect to the special nature of that particular offering. The following factors, in addition to those facts and representations required by subdivision (1)(b) of section 352–e of the New York Real Estate Syndicate Act, should be considered with respect to every offering of cooperative apartments. However, the necessary addition of other factors shall depend on the nature of the particular offering. Thus, for example, type of "land-

fill" should be included in developments of swamp or other marginal lands, or where existing buildings in the area have been troubled by excessive settling, etc.

8. In New York practice a suit in which the Attorney General is not a party becomes a matter of public record only when an index number has been assigned. An index number may not be assigned until settlement or final order of judgment.

9. *Cf.* Regulation S–K of the Securities Act of 1933 and the Securities Exchange Act of 1934

Sopher argues that certain matters, concluded as out-of-court settlements, will not become a matter of public record and that the distinction between ongoing and concluded litigation, therefore, is without merit and irrational. This argument is sophistic. The classification here is predicated upon practical considerations derived from the experience of the legislature. This Court will not question the wisdom of the legislature on the basis of some "theoretical inconsistency". "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Express Agency v. New York,* 336 U.S. 106, 110, 69 S.Ct. 463, 465, 93 L.Ed. 533 (1949). Therefore, since the regulation disclosure requirement at least partially protects the public from fraudulent transactions, the question whether the regulation "is sound or appropriate" is irrelevant.[10] *Id.* at 109, 69 S.Ct. at 465. *See LeClair v. Saunders,* 627 F.2d 606, 608 (2d Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981).

### V

Sopher further contends that the "Attorney General has calculatedly insisted upon disclosure of his lawsuit against Sopher, while allowing . . . other lawsuits and other proceedings [against persons and organizations similarly situated] to go unmentioned." (Complaint, ¶ 15). Thus, plaintiffs claim that the Attorney General's disclosure requirement is being applied to Sopher selectively and discriminatorily, in violation of the Equal Protection Clause. *See, e.g., Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

The Second Circuit recently addressed the issue of selective enforcement in *LeClair v.*

*Saunders, supra.* In *LeClair,* the court reiterated the Second Circuit standard first enunciated in *Moss v. Hornig,* 314 F.2d 89 (2d Cir.1963). "To show that unequal administration of a state statute offends the equal protection clause one must show an intentional or purposeful discrimination." *Id.* at 92. However, the *LeClair* court found "the bare bones of the phrase 'intentional and purposeful discrimination' [an] insufficient guide to judge liability in this context," *LeClair v. Saunders, supra,* 627 F.2d at 609, and looked to the criminal defense of selective prosecution to provide a useful analogy, *Id.*

In *United States v. Berrios,* 501 F.2d 1207 (2d Cir.1974), the court held:

> To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie,* (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as "intentional and purposeful discrimination."

*Id.* at 1211 (citations omitted). Drawing from the *Berrios* standards, the court in *LeClair* held that liability in a selective enforcement case should depend on proof that, "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was

---

which requires the disclosure of any material pending legal proceeding to protect the investing public.

**10.** Moreover, this Court agrees with the Attorney General that N.Y.Gen.Bus.Law § 352–e(1)(b) and 13 NYCRR § 17.2's requirement of disclosure of all "material" factors mandates the disclosure of relevant *adjudicated* lawsuits. Indeed, the Attorney General has provided a list of adjudicated cases which sponsors were required to reveal in their prospectuses. How-

ever, it is clear that the *emphasis* of the regulatory scheme is on the disclosure of *pending* cases. *See* 13 NYCRR § 17.2(b)(2)(xx). The aforementioned regulations have been superseded, after March 31, 1982, by 13 NYCRR, Part 18. Like Part 17, new Part 18 requires disclosure of "material" facts and emphasizes, by specifically requiring, disclosure of pending litigation. *See* 13 NYCRR §§ 18.3 and 18.-3(dd)(1).

based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders, supra,* 627 F.2d at 609–10.

█ Here, Sopher has presented several examples where the Attorney General has not required certain of Sopher's competitors to disclose pending, adjudicated or settled lawsuits. However, there is simply no evidence on the record that the failure to require disclosure in those isolated cases amounts to "purposeful discrimination" or a "malicious or bad faith intent" to injure Sopher.[11] This Court finds Sopher's allegation here to be without merit.

## VI

█ Finally, plaintiffs maintain that the disclosure requirement sought to be enjoined is being utilized by the Attorney General in an attempt to coerce Sopher to settle the lawsuit which the Attorney General has instituted. Thus, Sopher is alleging that its due process right to a fair hearing is being violated. This claim is wholly without merit since the Attorney General has a lawful right to insist on the required disclosure. To hold otherwise, absent a showing of selective enforcement, would jeopardize the public interest. *See Yakus v. United States, supra,* 321 U.S. at 440–41, 64 S.Ct. at 674.

## VII

█ Accordingly, plaintiffs have failed to sustain their burden with respect to this application for a preliminary injunction; therefore, the application is denied.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52(a).

It is so Ordered.

---

11. Indeed, the evidence overwhelmingly demonstrates that the Attorney General has required disclosure of pending and adjudicated cases. In certain cases that were the subject of an "assurance of discontinuance", the Attorney General, in his discretion, felt that the alleged violations involved were either minor or did not rise to the level of materiality requiring disclosure in an offering plan. Moreover, Sopher's reliance on New York case law concerning intent and selective enforcement is inappropriate, *see Matter of 303 West 42nd Street Corp.,* 46 N.Y.2d 686, 416 N.Y.S.2d 219, 389 N.E.2d 815 (1979), since this Court is bound to follow Second Circuit precedent.