Alfonso Correa **SUAREZ, Elisa Leon Arroyo, Manuel Torrech, Cesar Torres Gonzalez, Lourdes Colon Martinez, Ricardo Rodriguez Rodriguez, Enrique Jose Arana Adorno, Waldemar Rivera, Hector Luis Perez Cruz, Angel Franceschi Tristani, Plaintiffs,**

v.

**JUNTA DENTAL EXAMINADORA (DENTAL EXAMINING BOARD), Luis Blanco Dalmau, Zaida Cesario De Sanchez, Fernando Iturrino, Francisco Amador and Arturo Benavent, Defendants.**

**Civ. No. 82–1306(CC).**

United States District Court, D. Puerto Rico.

Jan. 31, 1984.

---

Juan L. Boscio-Monllor, Ponce, P.R., for plaintiffs.

Pedro A. Del-Valle-Ferrer, Federal Litigation Div., Dept. of Justice, Com. of Puerto Rico, San Juan, P.R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

A group of dentists who completed dental studies in foreign academic institutions but who do not have the license required to practice dental surgery in Puerto Rico filed this civil rights action (42 U.S.C. § 1983) against the Board of Dental Examiners of the Commonwealth of Puerto Rico and its members claiming that the Board's refusal to permit them to take the practical and theoretical examinations required to practice dental surgery in Puerto Rico violated their rights under the Due Process and Equal Protection Clauses of the United States Constitution. They contend that the

Board's refusal on grounds that they did not graduate from an acceptable institution of dental studies is capricious and unreasonable for on previous occasions it has permitted graduates from non-accredited schools to practice dental surgery in Puerto Rico. They seek an award of damages and injunctive relief ordering the Board to permit them to take the examinations. The merits of plaintiffs' constitutional action have been challenged in a motion for summary judgment in which defendants urge that the Board's action is based on a legitimate statutory requirement which they are bound to follow and that the only time that the Board has allowed graduates from non-accredited institutions to practice dental surgery was in response to special laws enacted to deal with a need at a particular time to provide dental services in Puerto Rico: Law No. 104 of June 26, 1962, Law No. 120 of June 8, 1967 and Law No. 136 of June 26, 1968. *See: Comments* to P.R. Laws Ann., Tit. 20 Sec. 89 and Tit. 24 Sec. 290–297. Plaintiffs counter these arguments with general statements such as that the Board, by accepting graduates from non-accredited dental schools, established a practice which should have been uniformly applied to them and that the Board's "operational procedure" is so disorganized that it is "repugnant to the most basic principles of constitutional law and by so doing have been and are violating plaintiffs' rights without due process of law." Save for the statutory exceptions, they do not point to any specific unequal treatment afforded to others situated in their same category (i.e., graduates from non-accredited dental schools) or to a particular misuse or abuse of certain procedures nor do they challenge the constitutional validity of the laws which the Board is entrusted to apply. They tacitly agree with defendants on the lack of genuine factual controversies yet disagree on the interpretation of how the law should be applied to the undisputed facts for in their opposition they have requested summary judgment in their favor. Regardless of the exact meaning of plaintiffs' cryptic request, they have not shown that there is genuine dispute over material facts and the

law, as shall be discussed, leads us to conclude that no valid constitutional claim can be asserted on these facts.

■ In advancing their due process claim, plaintiffs have ignored an element necessary for the alleged injury to have a constitutional dimension: that some sort of legitimate property interest, as defined, recognized and delineated by state law, be affected by the questioned governmental action. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Beitzell v. Jeffrey,* 643 F.2d 870, 873–74 (1st Cir.1981). In Puerto Rico the law clearly adverted plaintiffs and all similarly situated that a diploma from a university or college acceptable to the Board was one of the requirements to practice dental surgery in Puerto Rico. The law provides in no uncertain terms that:

Every person desiring to obtain a license to practice dental surgery in the Commonwealth of Puerto Rico shall fulfill the following requirements with the Board of Dental Examiners:

(1) . . . .

(2) . . . .

(3) . . . .

(4) Have a dental surgeon diploma or its equivalent by the School of Odontology of the Medical Sciences Campus of the University of Puerto Rico, or by any other university or college, in which case the Board shall accept said academic record if same proves:

(a) that the admission requisites and the academic program, basis of the diploma or its equivalent, are analogous to those required by the School of Odontology of the Medical Sciences Campus of the University of Puerto Rico for the same purpose.

(b) that he has passed at least the last two years of study required for the issuance of such diploma or its equivalent in a university or college, that in the judgment of the Board, both by reason of his programs of study and by the acknowledgment held in the country where it is located, or in other jurisdictions, it

may be reasonably considered that it is a comparable and adequate educational institution, as to the teaching of said courses with the Faculty of Odontology of the Medical Sciences Campus of the University of Puerto Rico.

P.R.Laws Ann., Tit. 20 Sec. 89. This being the state of law when plaintiffs enrolled at the non-accredited dental schools, we fail to see what sort of justifiable reliance they could have had in being permitted to practice dentistry in Puerto Rico after graduating from such institutions. Absent an allegation or some indication in the record that plaintiffs were somehow misled by the Board into believing that graduates from these institutions would be accepted or that at the time they enrolled, or any time thereafter, the Board had accepted the schools as suitable and later rejected them, the procedural due process claim fails to even break ground. Plaintiffs have no one but themselves to blame for not being able to comply with one of the requirements of section 89.

 The claim that they were not afforded equal protection of law is also baseless. It is undeniable that section 89 creates certain classes of applicants based on the type of dental school from which they graduate, yet most laws involve some sort of discrimination whereby certain classifications are made and afforded different treatment. It is only when this discriminate treatment is not related to a legitimate legislative end or when it is based on a "suspect" classification that it may violate the Equal Protection Clause. *See gen.: Rinaldi v. Yeager*, 384 U.S. 305, 308–10, 86 S.Ct. 1497, 1499–500, 16 L.Ed.2d 577 (1966) and *Procario v. Ambach*, 561 F.Supp. 804, 809–10 (N.D.N.Y.1983). Aside from the fact that plaintiffs have not challenged the constitutionality of the classifications created by the statutes involved, it is also important to note that no suspect category has been invoked and that the legitimate power of the state in regulating professions dealing with public health has long been recognized. *See e.g.: Graves v. State of Minne-*

*sota*, 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331 (1926). In *Graves*, the Court upheld the constitutionality of a state's requirement that one graduate from an acceptable dental school in order to practice dentistry in the state and said: "Clearly the fact that an applicant for a license holds a diploma from a reputable dental college has a direct and substantial relation to his qualification to practice dentistry." *Graves* at 428, 47 S.Ct. at 123.

Plaintiffs' constitutional action boils down to a claim that the Board has applied unequally the valid statutory requirements it was entrusted to apply. However, support for this claim of selective enforcement rests on broad conclusory allegations and general references in plaintiffs' motions. One would think that after the ample discovery period that has been afforded plaintiffs and the many opportunities offered to further their allegations since the complaint was filed in May 1982, they would by now be able to, at least, make a prima facie showing that their equal protection claim has some substance. The Court after examining the entire record has found that the only applicants graduated from institutions such as plaintiffs (Universidad Central del Este and Universidad Nacional Autónoma de México) who have been allowed to take the exams were permitted to do so pursuant to special laws. (See Appendix A and B of Second Amended Answer to Plaintiffs' First Set of Interrogatories filed by defendants on December 3, 1982). Plaintiffs' only indication of preferential treatment is based on the fact that other applicants from unaccredited schools (shown by the record to have been only three such applicants) were allowed to take the examinations pursuant to special legislation.[1]

However, the special laws passed to admit dentists who had not graduated from accredited schools for a limited practice have not been challenged by plaintiffs. In any event, their reasonableness and relationship to a legitimate legislative end, i.e.: cure a temporary deficiency in the number of dentists available to provide state dental

---

**1.** See page 4 of plaintiffs' Opposition to Motion for Summary Judgment.

care, is more than evident. (For an unsuccessful challenge to similar special laws dealing with provisional health needs, *see: Benson v. Arizona State Bd. of Dental Examiners,* 673 F.2d 272, 277–78 (9th Cir. 1982).

 Plaintiffs have chosen to rest on a roughly sketched constitutional claim based on repetitive incantations of the words "equal protection" and "due process" without making any references to any instances, aside from those justified by the special laws which were not even in effect when many of them started their dental education. They have not even made a raw challenge to the Board's application of the statutory criteria for recognizing a dental school, a relatively simple task given the accessibility of the information needed to make a comparative analysis of the courses of study and professional recognition of the institutions that they attended with comparable items in the School of Odontology of the Medical Sciences Campus of the University of Puerto Rico. The party opposing a motion for summary judgment cannot rest on the hope that the factual basis of broadly phrased pleadings will somehow emerge at trial without pointing to specific facts in the record which may still be in controversy and which are relevant to the outcome of the litigation. *See: Emery v. Merrimack Valley Woods Products, Inc.,* 701 F.2d 985, 990–93 (1st Cir.1983); *Manego v. Cape Cod Five Cents Sav. Bank,* 692 F.2d 174, 176–77 (1st Cir.1982); *Over The Road Drivers, Inc. v. Transport Insurance Co.,* 637 F.2d 816, 818 (1st Cir.1980).

 Plaintiffs' reference to Justice Mathew's memorable phrase in *Yick Wo v. Hopkins,* 118 U.S. 356, 373, 6 S.Ct. 1064, 1072, 30 L.Ed. 220 [2] (1886) is a typical attempt to fuel a meritless cause of action with a general principle of constitutional law. That case and this one depend upon an entirely different state of facts. There, the appellant, Yick Wo, was deprived of a means of making a living at the mere will of the board of supervisors of the city of San Francisco which refused him and 200 other Chinese subjects permission to carry on a laundry business while permitting 80 others, not Chinese subjects, to carry on the same business under similar conditions. The Court concluded that no reason existed for the discrimination "except hostility to the race and nationality to which the petitioners belong, and which, in the eye of the law, is not justified." *Yick Wo* at 373, 6 S.Ct. at 1072. Here the Board's rejection of plaintiffs' petition to take the exams is based not on an application of law with an "evil eye and an unequal hand" but on their valid authority and in the exercise of their duty to comply with the legitimate interest of the Commonwealth of Puerto Rico in requiring that those that choose this jurisdiction to practice dentistry be adequately qualified.

Plaintiffs having failed to establish even the semblance of a genuine controversy on material facts, *see e.g.: Mas Marques v. Digital Equipment Co.,* 637 F.2d 24 (1st Cir.1980), the undisputed facts before the Court compel, as a matter of law, that the complaint be dismissed. Judgment shall be entered accordingly.

SO ORDERED.

---

**2.** Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution.