RINALDI *v.* YEAGER, WARDEN, ET AL.

No. 940. Argued April 21, 1966.—Decided May 31, 1966.

*Frederick B. Lacey* argued the cause for appellant. With him on the brief were *Bernard M. Shanley, Donald A. Robinson* and *Thomas F. Campion.*

*Alan B. Handler,* First Assistant Attorney General of New Jersey, argued the cause for appellees. With him on the brief were *Arthur J. Sills,* Attorney General, *Eugene T. Urbaniak,* Deputy Attorney General, and *William J. Straub.*

MR. JUSTICE STEWART delivered the opinion of the Court.

The appellant, Joseph A. Rinaldi, was convicted of a criminal offense in a trial court of Essex County, New Jersey, and sentenced to prison for a term of five to 10

years.  The Superior Court of New Jersey, Appellate Division, allowed him leave to appeal *in forma pauperis* and granted his petition for a transcript of the trial court proceedings, finding that the transcript was needed for the appeal and that Rinaldi was unable to pay for it.[1] Rinaldi's appeal was unsuccessful, and he is now an inmate in the New Jersey State Prison.

As compensation for his work in prison, Rinaldi earns 20 cents a day, five days a week.  Since late 1963, however, every day's pay has been withheld from him by prison officials and sent to the Treasurer of Essex County, in order to reimburse the county for the $215 cost of the transcript it provided for his appeal.  This has been done in accordance with a statute enacted by New Jersey in 1956, shortly after this Court's decision in *Griffin* v. *Illinois,* 351 U. S. 12.  Rinaldi brought this suit to enjoin enforcement of the statute on the ground that it is uncon-

---

[1] The following New Jersey statute authorizes initial imposition of the expense of the transcript upon the county:

"Any person convicted of any crime may make application under oath to any judge of the County Court or Law Division of the Superior Court of the county where the venue was laid showing that a copy of the transcript of the record, testimony and proceedings at the trial is necessary for the filing of any application with the trial court, and that he is unable, by reason of poverty, to defray the expense of procuring the same, and any such judge may, being satisfied of the facts stated and of the sufficiency thereof, certify the expense thereof to the county treasurer, who shall thereupon pay such expense, the amount thereof having been approved by the judge to whom such application was made.  Where such person appeals to the Appellate Division of the Superior Court and copies of the transcript of the proceedings in the trial court are needed therefor he may make a similar application to such court which, being satisfied of the facts stated and the sufficiency thereof, may certify the expense and amount thereof to the county treasurer who shall thereupon pay such expense." N. J. Stat. Ann. § 2A:152–17 (1964 Cum. Supp.).

stitutional.[2]   A three-judge Federal District Court denied relief, 238 F. Supp. 960, and we noted probable jurisdiction, 382 U. S. 1007.

The statute in question is N. J. Stat. Ann. § 2A:152–18 (1964 Cum. Supp.), and it provides as follows:

> "The county treasurer shall file a notice of [the payment by the county] and the amount thereof with the institution in which said person, upon whose application the transcript of the record was prepared, is confined, and, to the extent of the expense incurred, the county treasurer shall be reimbursed from any institutional earnings of such person, in the event that the application for relief is denied by . . . an appellate court."

Rinaldi attacked the constitutionality of this statute on the basis of our decisions defining the duty of a State, under the Equal Protection Clause and the Due Process Clause, not to limit the opportunity of an appeal in a criminal case because of the appellant's poverty.   *Griffin* v. *Illinois, supra; Burns* v. *Ohio,* 360 U. S. 252; *Draper* v. *Washington,* 372 U. S. 487; cf. *Smith* v. *Bennett,* 365 U. S. 708; *Lane* v. *Brown,* 372 U. S. 477.   A logical extension of these decisions, the appellant contends, would prohibit a State from discouraging an indigent's freedom to appeal by saddling him with the obligation of paying for the cost of a transcript in the event his appeal is unsuccessful.   We do not reach this contention, however,

---

[2] The suit was brought pursuant to R. S. § 1979, 42 U. S. C. § 1983:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

because we find the statute constitutionally deficient upon a different ground.

The New Jersey law does not impose this financial burden upon all who have been convicted in its courts and whose appeals have been unsuccessful. It requires no repayment at all from a man who has received a suspended sentence or been placed on probation, regardless of how high his subsequent earnings may be. It requires no repayment at all from an unsuccessful appellant who has been sentenced only to pay a fine.[3] Instead, the law fastens the duty of repayment only upon a single class of unsuccessful appellants—those who are confined in institutions.[4] We find that the discriminatory classification imposed by this law violates the requirements of the Equal Protection Clause.

The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. *McLaughlin* v. *Florida,* 379 U. S. 184, 189–190. It also imposes a requirement of some ration-

---

[3] It is true that some indigents who are fined may not be able to pay the fine. New Jersey provides that they may be placed at labor in an institution until the fine is paid. N. J. Stat. Ann. § 2A:166–14; N. J. Stat. Ann. § 2A:166–16. Those who are convicted of misdemeanors, however, may be permitted to go at large until the fine is paid. N. J. Stat. Ann. § 2A:166–15. Moreover, felony defendants indigent for transcript purposes may be able to obtain the money to pay a fine and thus avoid confinement in an institution and the reimbursement obligation that such confinement entails.

[4] Moreover, in view of another New Jersey statute, it appears that wages may not be withheld from every inmate who would otherwise be indebted to a county. N. J. Stat. Ann. § 30:4–92 provides in relevant part: "Compensation for inmates of correctional institutions may be in the form of cash or remission of time from sentence or both." Hence, some inmates may not receive cash in exchange for their labor. Other inmates, of course, may not be assigned to work. The reimbursement statute appears to allow for these variations insofar as it provides that ". . . the county treasurer shall be reimbursed from *any* institutional earnings of such person." (Emphasis supplied.)

ality in the nature of the class singled out. To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons. "The Constitution does not require things which are different in fact . . . to be treated in law as though they were the same." *Tigner* v. *Texas,* 310 U. S. 141, 147. Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have "some relevance to the purpose for which the classification is made." *Baxstrom* v. *Herold,* 383 U. S. 107, 111; *Carrington* v. *Rash,* 380 U. S. 89, 93; *Louisville Gas Co.* v. *Coleman,* 277 U. S. 32, 37; *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415.

We have been referred to no record of legislative history that might disclose with precision what this law was designed to achieve, but the statute itself bears the heading "Reimbursement." We may assume that a legislature could validly provide for replenishing a county treasury from the pockets of those who have directly benefited from county expenditures. To fasten a financial burden only upon those unsuccessful appellants who are confined in state institutions, however, is to make an invidious discrimination. Those appellants who have been sentenced only to pay fines have been accorded the same benefit by the county—a transcript used in an unsuccessful appeal, and all that distinguishes them from their institutionalized counterparts is the nature of the penalty attached to the offense committed. There is no defensible interest served by focusing on that distinction as a classifying feature in a reimbursement statute, since it bears no relationship whatever to the purpose of the repayment provision. Likewise, an appellant subject only to a suspended sentence or to probation is likely to differ from an inmate only in the extent of his criminal record. That, too, is a trait unrelated to the fiscal objec-

tive of the statute. Finally, the classification established by the statute cannot be justified on the ground of administrative convenience. Any supposed administrative inconvenience would be minimal, since repayment could easily be made a condition of probation or parole,[5] and those punished only by fines could be reached through the ordinary processes of garnishment in the event of default.[6]

Apart from its fiscal objective, the only other purpose of this law advanced by the appellees is the deterrence of frivolous appeals. Assuming a law enacted to perform that function to be otherwise valid, the present statutory classification is no less vulnerable under the Equal Protection Clause when viewed in relation to that function. By imposing a financial obligation only upon inmates of institutions, the statute inevitably burdens many whose appeals, though unsuccessful, were not frivolous, and leaves untouched many whose appeals may have been frivolous indeed.

This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. *Griffin* v. *Illinois,* 351 U. S. 12; *Douglas* v. *California,* 372 U. S.

---

[5] See N. J. Stat. Ann. § 2A:168–2; N. J. Stat. Ann. § 2A:167–8. See, Kamisar & Choper, The Right to Counsel in Minnesota: Some Field Findings and Legal-Policy Observations, 48 Minn. L. Rev. 1, 23–24:

"The practice of certain judges in some of [the counties studied] and of all judges in others is to require, as a condition of probation, that the convicted indigent repay the county's expenditure for his lawyer. The probation officer usually informs the judge of the amount the defendant should be expected to repay each week. The survey indicates that this condition of probation is rarely, if ever, violated."

[6] See N. J. Stat. Ann. § 2A:17–50.

353; *Lane* v. *Brown,* 372 U. S. 477; *Draper* v. *Washington,* 372 U. S. 487. We may assume that a State can validly provide for recoupment of the cost of appeals from those who later become financially able to pay. But any such provision must, under the Equal Protection Clause, be applied with an even hand.

The judgment is reversed, and the case is remanded to the District Court for proceedings consistent with this opinion.
                                                    *It is so ordered.*

Mr. Justice Harlan, dissenting.

New Jersey recoups the cost of trial transcripts furnished to indigents out of prison allowances made to incarcerated prisoners, but does not seek reimbursement from parolees or convicted defendants not imprisoned. The Court holds this differentiation to violate the Equal Protection Clause. I am unable to agree. Under conventional equal-protection standards which disapprove only irrational and arbitrary classifications, the statute is plainly valid. See *McLaughlin* v. *Florida,* 379 U. S. 184, 190–191; *McGowan* v. *Maryland,* 366 U. S. 420, 426; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78–79. Surely the State might reasonably choose to reimburse itself for such transcript costs out of prison allowances, but deem it not worth the added time and trouble, or even advisable, to attempt to extract such charges from a convict not in prison who must support himself on his own resources. Adhering to the traditional test of rationality, I would affirm the decision of the District Court.*

---

*I find no substance to appellant's main argument, which the Court lays aside, that to permit any such recoupment from an indigent is an unconstitutional deterrent to appeal. Nor do I think there is any force to the argument in n. 4 (*ante,* p. 308), not even suggested by appellant, which at best goes to the validity of the statutes governing compensation and not to the reimbursement statute being reviewed.