**Johnny HARPER, Petitioner-Appellant,**

v.

**George A. KROPP, Warden, State Prison of Southern Michigan, Respondent-Appellee.**

**No. 19567.**

United States Court of Appeals, Sixth Circuit.

May 18, 1970.

David B. Rosenthal, Detroit, Mich., for petitioner-appellant.

Stewart H. Freeman, Asst. Atty. Gen., Lansing, Mich., for respondent-appellee. Frank J. Kelley, Atty. Gen., Robert A. Derengoski, Sol. Gen., Lansing, Mich., on the brief.

Before McCREE and COMBS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

COMBS, Circuit Judge.

Petitioner-appellant was convicted on January 28, 1960, of the unlawful sale and possession of narcotics in the Circuit Court for the County of Genesee, Michigan on charges contained in a two-count information. He is presently confined in the State Prison of Southern Michigan serving concurrent sentences of 20-to-30 years imprisonment on Count I, and 8-to-10 years imprisonment on Count II. The statutory provisions under which he was convicted are contained in the Michigan Suppression of Illegitimate Traffic in Narcotic Drugs Act, M.S.A. 18.1121–18.1127 (C.L. '48, §§ 335.151–335.157).

In June, 1965, petitioner filed an original action in the Michigan Supreme Court in which he sought a writ of habeas corpus with an ancillary writ of certiorari to the Circuit Court of Genesee County. The court considered the petition as an application for leave to appeal and granted leave. The court then remanded the cause to the Michigan Court of Appeals pursuant to Michigan General Court Rule 865.1(7).

In the Michigan Court of Appeals petitioner contended that the statutes under which he was convicted violate the Equal Protection Clause of the Fourteenth Amendment since it punished the act committed by him with a minimum sentence of twenty years imprisonment and a maximum sentence of life imprisonment, which act, if committed by a person classified as a person "having a license under the provision of Act 343," could be punished without any minimum sentence and a maximum sentence of up to ten years.

Petitioner's claim was rejected by the Michigan Court of Appeals, which wrote two opinions. People v. Harper, 1 Mich. App. 480, 136 N.W.2d 768 (1965). The Michigan Supreme Court affirmed in two opinions, agreeing respectively with the reasoning of the Michigan Court of Appeals. Three justices dissented and held the statutes unconstitutional. People v. Harper, 379 Mich. 440, 152 N.W.2d 645 (1967). Petitioner's appeal to the Supreme Court was dismissed in a per curiam decision on June 17, 1968. Harper v. Michigan, 392 U.S. 644, 88 S.Ct. 2296, 20 L.Ed.2d 1353.

Petitioner, having exhausted his state remedies, filed in the district court a petition for writ of habeas corpus relying on the same ground raised in the Michigan courts.

Upon the foregoing facts as stated in his memorandum opinion, the district judge held that the statutes in question do not actually make a classification and, even if they do, the classification is reasonable.

We are of opinion the district judge properly dismissed the petition. Petitioner was convicted for selling heroin. The State of Michigan is without power to license the sale of heroin, such sale being prohibited by federal law. 18 U.S.C. § 1402. Since a license to sell

heroin cannot be obtained from the State of Michigan, any person selling heroin in that state would be an unlicensed person and would be in violation of the statute under which petitioner was convicted (M.S.A. 18.1122) and subject to the same penalty imposed upon him. It follows that there is no statutory classification of persons as regards the sale of heroin in Michigan, and petitioner's claim of denial of equal protection of the laws must fail.

The judgment is affirmed.

McCREE, Circuit Judge (dissenting).

I respectfully dissent. The statute under which appellant was convicted of unlawful sale of narcotics provides, in pertinent part:

> Any person not having a license under the provisions of Act No. 343 of the Public Acts of 1937 * * * who shall sell * * * any narcotic drug shall be deemed guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for a term of not less than 20 years nor more than life. Mich.Comp.Laws, Sec. 335.152.

On the other hand, Section 335.52 and 335.70, Mich.Comp.Laws, provide, respectively, in pertinent part:

> It shall be unlawful for any person duly licensed under the provisions of this act to * * * sell * * * any narcotic drug, except as authorized in this act.

> Any person duly licensed under the preceding provisions of this act who violates any provision of this act shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 10 years or by a fine of not more than $10,000.00 or by both such fine and imprisonment.

The majority reasons that this statutory scheme does not result in a classification with regard to sales of heroin because the state of Michigan cannot license persons to sell heroin. See 18 U.S.C. § 1402. They conclude that any person selling heroin would therefore be an "unlicensed person" within the meaning of Section 335.152, Mich.Comp.Laws.

Initially, it should be observed that five of the eight justices sitting on the Michigan Supreme Court at the time this case was decided on direct appeal were of the opinion that the statutory scheme in question does result in a classification with regard to sales of heroin. People v. Harper, 379 Mich. 440, 152 N.W.2d 645 (1967). However, two of the five justices considered the classification reasonable and joined with the three remaining justices to form a majority for the purpose of affirming appellant's conviction. Although this interpretation of these statutes by a divided Michigan Supreme Court may not be binding upon us, 20 Am.Jur.2d Courts § 195 (1965), I do think that as a matter of comity it should be accorded great weight by a federal court concerned with the construction of Michigan statutes.

Furthermore, upon independent analysis of the statutory scheme, I would hold that it creates a classification with regard to sales of heroin. Sections 335.52 and 335.70, Mich.Comp.Laws, are directed at persons "duly licensed under the * * * provisions" of the Act who "sell any narcotic drug." [1] The "test of guilt under [these sections] is not whether the licensed person can sell heroin but whether he is licensed." People v. Harper, 379 Mich. at 453, 152 N.W.2d at 650 (Adams, J. dissenting). Nothing in the statutes suggests that the nature of the drug involved in an illicit sale alters the licensed status of the seller. Accordingly, if a licensed person sells heroin, he is subject to a maximum penalty of ten years in prison and a $10,000 fine instead of the twenty years to life imprisonment penalty provided for unlicensed

---

1. It is significant that the section immediately preceding section 335.52, Mich. Comp.Laws, the section declaring sales of narcotic drugs by licensed persons to be unlawful, expressly provides that heroin is a narcotic drug within the meaning of the Act. Mich.Comp.Laws, Sec. 335.51(12), (13).

vendors by section 335.152, Mich.Comp. Laws.

I also would hold that this classification is unreasonable. The act prohibited by Section 335.52, Mich.Comp.Laws, is precisely the same as that prohibited by Section 335.152, Mich.Comp.Laws. Only the penalty imposed for the commission of the prohibited act is different.

When a state singles out a particular class for special treatment, it bears the burden of justifying the preference accorded the favored group.

The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. * * * It also imposes a requirement of some rationality in the nature of the class singled out. To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons. "The Constitution does not require things which are different in fact * * * to be treated in law as though they were the same." * * * Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have "some relevance to the purpose for which the classification is made." Rinaldi v. Yeager, 384 U.S. 305, 308–309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966).

In the present case, the state would justify the disparity in the penalties imposed for the same act on the ground that the statutes in question are designed to accomplish different purposes. The sections defining the responsibilities of licensed persons regulate the legitimate usage and movement of narcotic drugs, whereas the sections directed at unlicensed persons are used to suppress illegitimate usage and movement.

The difficulty with this justification is that it ignores the fact that a sale of heroin by a licensed person constitutes illegitimate trafficking in narcotic drugs and is essentially no different from a sale by an unlicensed person. In fact, the sale by the licensed person may deserve greater condemnation since his access to narcotic drugs is sanctioned by the state.

The state also contends that the disparate treatment accorded licensed and unlicensed persons is supported by the need for a greater deterrent to achieve the suppression of illegitimate traffic in narcotic drugs. The state points out that statistically the incidence of violations of the narcotics laws is much higher among unlicensed persons than it is among licensed persons.[2]

Again, I find the state's argument unpersuasive. The high incidence of illegitimate traffic in narcotic drugs by unlicensed persons may justify subjecting such persons to the severe penalty provided in the Michigan statutes. I question, however, whether this goal supports the imposition of the less severe penalty on licensed persons who violate the narcotics laws.

A person licensed to deal in narcotic drugs has, by reason of his training and background, been placed in a position of trust by the state. His access to and use of narcotic drugs has been authorized. Accordingly, although the number of violations committed by licensed persons may be low, any violation at all is a particularly serious offense against the state; and, arguably, the perpetrator of the offense should be subjected to a more,

2. The statistics presented by the state show that nationally the ratio of arrests of unlicensed persons as compared to licensed persons for violations of narcotics laws was approximately 600 to 1. Of course, one problem with this statistic is that it does not indicate to what extent the arrests resulted in convictions. Another difficulty is that the higher incidence of arrests among unlicensed persons may merely reflect greater efforts and resources expended by law enforcement agencies with regard to detection of unlicensed violators of narcotics laws than those directed toward the apprehension of licensed violators.

not less, severe punishment than the unlicensed person.

To punish two people in a different manner for the commission of the same act because of a difference in their status is repugnant to the concept of equal protection under the law.

> The guaranty of "equal protection of the laws is a pledge of the protection of equal laws." * * * When the law lays an unequal hand on those who have committed intrinsically the same quality of offense * * *, it has made as an invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment. Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942).