REQUESTED BY: Dear Senator Chambers:
You have asked that we review the provisions of LB 319. Since your questions specifically concern the provisions of this bill relating to the allocation of an inmate's wages; we will confine our remarks on LB 319 to this section.
This bill provides, in part, that the wages of an inmate employed in some capacity at the Penal Complex or in a work release program shall be distributed pursuant to section 7 of this act.
Section 7 provides for a system of dividing an inmate's income (after payroll deductions and payment of necessary work related incidental expenses) for the following purposes (in this order):
(1) 10% retained by inmate;
(2) 50% for support of legal dependents, if any;
(3) 25% to 75% to the state as restitution for the amount of compensation awarded a victim of a crime for which the inmate is sentenced (until paid in full);
(4) costs of confinement;
(5) 10% to inmate release fund;
(6) remainder to pay any judgment for costs, fines or other lawful claims.
The allocation of prisoner funds to the prisoner or his legal dependants does not on its face raise constitutional issues. However, the system of allocating an inmate's funds to the state as restitution is, we believe, objectionable for several reasons.
First, it may be considered an enhancement of a criminal penalty, without notice, in excess of the penalty authorized by law and previously imposed by the court.
Second, it is a violation of the equal protection clause of both the United States and Nebraska Constitutions because only those individuals who are imprisoned are required to make payments to the state. The United States Supreme Court in Rindali v. Yeager, 484 U.S. 305,86 S.Ct. 1497, 16 L.Ed.2d 577 (1966), held that a New Jersey statute which imposed a duty only on imprisoned indigents to reimburse the county for the cost of a transcript in case of an unsuccessful appeal out of any institutional wages and did not impose the same financial burden on persons who received a suspended sentence, were placed on probation or who were sentenced only to pay a fine, constituted a discriminatory classification violative of the equal protection clause. Since individuals who receive a suspended sentence, probation or only a fine are not required to pay restitution to the state under LB 319, allocations to this fund are violative of the equal protection clause based on the rationale of Rindali, supra.
Finally, due process issues are also raised by the requirement to pay restitution since under the present procedure inmates do not receive notice of the hearing before the Crime Victim's Reparation Board. It is this board which actually determines hether money would be deducted from an inmate's wage fund since no restitution is required unless the victim of a crime for which he is sentenced has previously received money from the board.
We will not discuss your questions concerning victimless crimes or the equal protection issues raised by the fact that an inmate may or may not have dependents because under the present system the allocation of money fromany inmate should be stricken.
With regard to your questions concerning charges made against an inmate's wage fund for costs of confinement, in our opinion there is nothing constitutionally wrong with the state requiring inmates to contribute toward the expenses of their incarceration. As the court stated in Rindali,supra, at 309, 86 S.Ct. at 1500: `We may assume that a legislature could validly provide for replenishing a county treasury from the pockets of those who have directly benefited from county expenditures.' However, in so doing the Legislature may not choose indiscriminately to week reimbursement from some and not from others. The distinctions which are drawn must have some relevance to the purpose for which the classifications are made.
Here the Legislature has elected not to make those distinctions itself but to allow the Director to choose who shall pay and who shall not pay. Under paragraph (4) `[T]he director may authorize the chief executive officer to reimburse the state from a person's wage fund. . .' (Emphasis added.) This discretionary power without more stringent guidelines is, we think, impermissible.
It should be pointed out that rules could be adopted by the Director, as is required by section 7, which might conceivably cure these constitutional defects. However, this result is not required by the language of LB 319. The Director could just as easily adopt rules which would create constitutionally improper classifications.
Determination of costs of confinement is not such a problem.
The term `costs of confinement', while it may be interpreted broadly, is subject to limitation. Assuming rules are adopted as specified in section 7, criteria would be provided for determining costs of confinement.
Under the Administrative Procedures Act, an inmate could challenge an unrealistic determination of costs or any determination made by the Director under a rule implemented pursuant to this act.
Finally, you question the provision of this bill concerning deductions for `judgments for costs, fines or other lawful claims.' As presently written, a deduction may be made from an inmate's wage fund for all judgments for costs, fines and claims. We would question on due process grounds any judgment for costs, fine or claim not the result of a procedure which would comply with basic due process requirements. Admittedly, judgments are generally the product of a judicial determination but this is not always so with fines or lawful claims (a claim may be lawful and not the product of a procedure complying with due process) which could be made from an inmate's fund. Unless this provision is further clarified by amendment, it too should fall on due process grounds.
In conclusion, paragraph number (3), is clearly, in our opinion, unconstitutional as written. Purposes number (4) and (6) are so loosely written as to permit unconstitutional application. While it is true that these potential defects could be cured by rule and regulation, without more stringent legislative guidelines requiring compliance with constitutional provisions as discussed herein we feel that numbers (4) and (6) must be identified as having grave constitutional deficiencies.