**Edward A. GANEY; and Minor Son, Vance Alfred Ganey, Appellants,**

**v.**

**Napoleon B. BAREFOOT; and Charles E. Rice, III, Appellees.**

No. 83–6281.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 15, 1983.

Decided Dec. 5, 1984.

Norman B. Smith, Greensboro, N.C. (Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., on brief), for appellants.

Jacob L. Safron, Sp. Deputy Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen., Raleigh, N.C., on brief), for appellees.

Before ERVIN and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

This is a proceeding against two North Carolina state trial judges in which Ganey questions the constitutionality of a North Carolina statute. The statute requires that an appellant in a civil case be allowed to proceed in forma pauperis only upon presentation of a certificate of a lawyer that he has examined the appellant's case and is of the opinion that the trial court's action "is contrary to law." The district court held that the challenged provision did not

violate the federal Constitution, though it did so without discussion.

We think the district court lacked subject matter jurisdiction to decide the question. In neither proceeding was Ganey denied the right to proceed on appeal in forma pauperis. His appeals were dismissed for failure to perfect them. Perhaps more importantly, Ganey attempted to substitute the United States District Court for the North Carolina Court of Appeals in its role of appellate supervision of the trial courts of that state.

## I.

The cases grew out of a controversy over custody of a child and termination of Ganey's parental rights.

Ganey and Cynthia Brunjes were married in 1967. The couple separated on December 5, 1970, and thereafter Cynthia lived with her mother and father. Approximately a month and a half after the separation, however, Cynthia bore a son, Vance Alfred Ganey.

Cynthia obtained a divorce from her husband on February 28, 1972 by a decree of the General Court of Justice, Fifth District Court Division, New Hanover County, *Ganey v. Ganey*, 71 CvD 2490. The court found that during 1971 Cynthia's father, Alfred Brunjes, had supported her and her child and that Edward A. Ganey, Jr. had contributed nothing to his son's support. Custody of the child was awarded to Cynthia.

In October 1974, Cynthia was a school teacher. On the 16th day of that month, she was accosted by her former husband in the parking lot of the school where she taught. He shot and killed her. He entered a plea of guilty to second degree murder, and a sentence of life imprisonment was imposed upon him.

Thereafter, the child has continued to reside in the home of his maternal grandparents who have provided for his care and in a proceeding in the juvenile section of the General Court of Justice of New Hanover County, the grandparents sought to have Edward Ganey's parental rights terminated, *In the Matter of Vance Alfred Ganey*, 77 CvD 1712. In that proceeding, a privately retained lawyer filed an answer for Ganey. The lawyer also filed a motion in the old divorce case on behalf of Ganey and his mother, Cleo J. Ganey, as third party plaintiffs against Mr. and Mrs. Brunjes as third party defendants. Ganey sought to have the child placed in the custody of his mother, but the court awarded custody to the maternal grandparents, with whom the child had lived since his birth. Judge Barefoot, one of the defendants in this proceeding, did award reasonable visitation rights to Cleo Ganey and to the child's two Ganey uncles and their wives, but specified that the plaintiff would have no right to have the child visit him in prison.

After a hearing on the motion in the old divorce case but before Judge Barefoot's decision, Ganey discharged his lawyer. He sought and obtained from Judge Barefoot leave to "appeal in forma pauperis in accordance with N.C.G.S. 1–288." He was allowed fifty-five days within which to make up and serve the case on appeal.

Apparently, Ganey did nothing to perfect that appeal.

Approximately a year later, the parental rights termination proceeding was brought to a hearing before Judge Rice, the other defendant. In that hearing, Ganey represented himself. Judge Rice found, of course, that it was in the best interest of the child to remain in the care and custody of his maternal grandparents with whom he had lived since his birth. Ganey gave notice of appeal in open court, and Judge Rice's order provided that he "is allowed to proceed with his appeal in forma pauperis and cost bond is waived."

Ganey then filed in the North Carolina Court of Appeals a "petition for writ of certiorari and motion for consolidation and for suspension of rules" in the divorce case and a petition for writ of mandamus in the parental rights termination case. He sought appellate review of both proceedings on a consolidated basis. There was a

general claim that Judge Barefoot had violated his constitutional rights, but his principal complaint seems to have been that the order had been prepared by counsel for the maternal grandparents and was "full of lies." He also filed a separate petition for a writ of mandamus against Judge Rice in which he again alleged that the order had been prepared by counsel for the maternal grandparents, and was "full of lies." He sought an order directing Judge Rice to prepare his own order, and to provide him with a transcript of the hearings in both cases. Without a transcript, he said he was unable to prepare exceptions or to write a brief.

The next day, Ganey filed a "motion for order" in Judge Rice's court. Though Judge Rice had granted him leave to proceed in forma pauperis, the motion sought another order granting such leave under N.C.G.S. 1–288. In support of the motion, he alleged that he had been advised by his former lawyer that the judgment was contrary to law. Confronted with that motion, Judge Rice responded that Ganey had not met the requirement of the statute that a certificate of the lawyer be presented.

Ganey then promptly prepared the complaint in this case, against the two judges only, in which, for the first time, he alleged that the requirement that he present a lawyer's certificate of legal error in the judgment is in violation of his federal due process and equal protection rights.

After passage of the fifty-five days within which Ganey should have prepared his record on appeal, the maternal grandparents filed a motion to dismiss the appeal. The motion was granted, and the appeal was dismissed for failure to perfect the appeal within the fifty-five days.

There was a stipulation that if Ganey had filed a record on appeal then the clerk of the trial court would have made it up and sent it on to the Court of Appeals, unless by some chance the copy of Judge Rice's letter to Ganey had come to her attention. Had that happened, she would have consulted the judge. If the record had been sent up to the Court of Appeals, Judge Rice's order would have sufficed to have the case placed on the docket of that court. If the absence of the lawyer's certificate was brought to the attention of the clerk of the Court of Appeals by a motion to dismiss or otherwise, the question would have been one for the judges to determine.

■ If only Ganey had known it, the door of the Court of Appeals was ready to open for him, subject to a possible later motion to dismiss the appeal. He seems to have thought he knew more about the requirements in North Carolina for an order permitting one to proceed on appeal in forma pauperis than did Judge Rice, and clearly a lawyer's certificate is a requirement of the statute. Still, if only he had prepared his case on appeal, the case would have gotten to the Court of Appeals, and if there had been a motion to dismiss, Ganey could have responded with the constitutional contention he brings here. If, after receipt of Judge Rice's letter, he reasonably felt there was no chance the case would get to the Court of Appeals without a lawyer's certificate, he could have raised his constitutional claim before Judge Rice, and an adverse decision by Judge Rice would, itself, have been appealable to the North Carolina Court of Appeals. He did neither of those things. Nor did he raise the claim in the petitions he filed with the North Carolina Court of Appeals. The omission apparently was deliberate, for the federal complaint was promptly prepared after receipt of Judge Rice's letter and while his appeal from Judge Rice's order was still viable. Indeed, the federal complaint was notarized before denial of the petitions he had filed in the North Carolina Court of Appeals.

■ Ganey's substantive claim may not be insignificant. Finding an analogy in *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), Ganey contends that parental rights are so important and precious that an order terminating them should be appealable by an indigent without prepayment of fees as a matter of constitutional right. Even if the state is not constitutionally required to provide an

appeal in a case such as this, *Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) once it does so care should be taken to assure that such access is "free of unreasoned distinctions that can only impede open and equal access to the courts." *Rinaldi v. Yeager,* 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966). If Ganey has a constitutional right of access to an appellate court in this situation, the requirement of the lawyer's certificate seemingly defeats the statute's purpose. The regular filing fee is only $10, though there is a requirement of a bond for costs. That requirement is waivable, and was waived by Judge Rice. If Ganey had not discharged his lawyer he might have avoided the problem, but he did consult a lawyer in Durham. She wrote to him that she would be glad to consider his case and to consult with him for a fee of $150, provided he supplied her with the transcript. No lawyer who had not been present during the proceedings could give an opinion of legal error without access to a transcript of those portions of the proceeding which were relevant to the claim, and we are told that the cost of reproduction of the full transcript of these proceedings would have been several hundred dollars. It is apparent that proceeding as a pauper under § 1–288 may be a great deal more expensive and burdensome than proceeding as a prepaid appellant. Moreover, a prepaid appellant is free to urge upon the court a change in the law, a position apparently not open to an indigent proceeding under § 1–288.

Ganey, however, not only seemingly deliberately withheld his federal contention from the state courts, he also has sought relief in a court that is unable to grant it. In Ganey's complaint, he requested injunctive relief, a mandatory order requiring Judge Barefoot and Judge Rice to refrain from enforcing the lawyer's certificate requirement of § 1–288 in Ganey's cases or any other cases. In apparent recognition of the fact that this court is not empowered to issue any such mandatory injunction to state court judges, Ganey's present lawyer, supplied by the American Civil Liberties

Union, asks only that we grant a favorable declaratory judgment, but he expects any such judgment to have the effect of an injunction, and to require that a belated appeal, at least in the parental rights termination case, be granted by the state court. This court, however, has no power to mandate the processing of cases lately pending in state courts. If a declaratory judgment would not have the effect for which Ganey's counsel hopes, its issuance would simply be futile. See Restatement, Second, Conflict of Laws § 85.

There is yet another reason that effective relief may not be granted. When proceeding pro se, Ganey contended that he could not prepare his case on appeal or write a brief without a transcript of the hearing. His lawyer makes the same claim, and, on appeal, has expanded his position, claiming that Ganey is entitled to a transcript at the expense of the state. The proposition that an indigent civil litigant is entitled to a transcript of his trial at the expense of the state is unprecedented. If the case on appeal could not be settled by the trial judge under the provisions of N.C.G.S. § 1–283, the absence of a transcript would foreclose further processing of his appeal even if the state court entered an order allowing a belated appeal without prepayment of fees or a lawyer's certificate.

## II.

If Ganey had made his contentions in the state courts as he should have, he might ultimately have obtained federal review of the state court decisions, but that review would have been in the Supreme Court of the United States which is empowered to review federal questions arising in the course of state court litigation. Neither the district court nor this court, however, is empowered to exercise that kind of appellate supervision of state court procedures and orders. Just as the lower federal courts lack subject matter jurisdiction over the individual claims of disappointed state bar applicants asserting claims based upon federal rights, *see Woodward v. Virginia*

**1128**

*Board of Bar Examiners,* 598 F.2d 1345 (4th Cir.1979), *Richardson v. McFadden,* 563 F.2d 1130 (4th Cir.1977) (en banc); *Doe v. Pringle,* 550 F.2d 596 (10th Cir.1976) *cert. denied,* 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227, so we lack subject matter jurisdiction of Ganey's claim.

The principle is analogous to the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which has been extended to civil proceedings. *See Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Our intrusion into such matters of state court practice and procedure would be highly disruptive of the state courts. The state courts are fully capable of managing the processing of their case load, and they should be allowed to do it. If along the way some federally secured right should be violated, the party would have potential access to the Supreme Court of the United States, but our intervention would be a serious violation of the principles of federalism and of comity.

We vacate the order of the district court holding the statute constitutional, and remand the case with instructions to dismiss the complaint for lack of subject matter jurisdiction.

VACATED AND REMANDED.