819 F.2d 289
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GAY INMATES OF SHELBY COUNTY JAIL/CRIMINAL JUSTICE COMPLEX,
Plaintiffs- Appellant,
v.
Eugene BARKSDALE, Sheriff, Defendant-Appellee.
 No. 84-5666.
 United States Court of Appeals, Sixth Circuit.
 June 1, 1987.
 
 Before LIVELY and RYAN, Circuit Judges, and JOINER, Senior District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 This is a class action brought by a group of county jail inmates who have been confined together in a sector of the jail set aside for homosexuals. Plaintiffs challenge as unconstitutional the conditions of their confinement, the procedure employed to segregate them, the involuntary segregation itself, and a new segregation procedure ordered and approved by the court below. The inmates claim violations of the first, fifth, eighth, and fourteenth amendments to the United States Constitution.
 
 
 2
 The district court rejected all of plaintiffs' arguments except their objection to the procedures employed to segregate them. Because the court upheld the defendant's claim of qualified immunity, the only remedy ordered was an injunction requiring defendant to compile and implement acceptable intake classification procedures. This was done, and the court approved the new procedures. Defendant has not cross-appealed.
 
 
 3
 We affirm.
 
 
 4
 Plaintiffs are a dozen inmates at the Shelby County Jail in Tennessee. The jail's average population is just over 1,000 inmates per night, seventy-five percent of whom are pretrial detainees.
 
 
 5
 Plaintiffs allege several combinations of loosely connected sets of facts. One claim concerns an incident on March 4, 1984, when plaintiffs, all resident in the homosexual "POD" at the jail, were provided cold ravioli for dinner, and in an insufficient amount as well, after the rest of the jail inmates had been served a bountiful barbeque meat dinner. They refused to eat, and violence eventually ensued in which two inmates were beaten and kicked. An inmates in the POD were then isolated for the night.
 
 
 6
 Another claim is that homosexual inmates are segregated from others even when they attend church, and their separation is handled in an embarrassingly public and insensitive manner.
 
 
 7
 Plaintiffs also object to what has been the unwritten "standard operating procedure" at the jail for classification of incoming arrestees. Plaintiffs allege, and defendant generally concedes, that the procedure in the past has been for the intake officer to make a purely subjective judgment whether the incoming arrestee is homosexual. Sometimes this judgment has been based on fairly probative evidence, as when a male arrestee arrives at the jail dressed as a female, when the arrestee has been apprehended while engaged in some homosexual act, or when the arrestee admits to being homosexual. Other times the judgment is based upon less probative evidence, as when the intake officer's impression is that the arrestee appears weak, small, or effeminate; or when the arrestee is classified as homosexual simply because records show that this same arrestee has been so classified previously.
 
 
 8
 We are asked to invalidate the district court's classification order and require preparation of a new order more In keeping with the plaintiffs' preferences; to enjoin interference by the defendants with plaintiffs' "access to the courts"; and to award nominal and punitive damages, costs and attorney fees.
 
 
 9
 Because the plaintiffs are inmates in a county jail, the federal courts may intervene only if the plaintiffs' constitutional rights have been violated, since there are no pertinent federal statutes to construe. Most of the inmates are pretrial detainees and therefore have not been convicted of any crime. The conditions of confinement of convicted inmates are evaluated under an eighth amendment standard, but a somewhat different standard applies to pretrial detainees because, "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt. Bell v. Wolfish, 441 U.S. 520, 535 (1979).
 
 
 10
 In Bell v. Wolfish, the Supreme Court described how a court may go about determining whether a certain "disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." 441 U.S. at 537.
 
 
 11
 "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose .... Absent a showing of an expressed intent to punish on the part of detention facility officers, that determination generally will turn on 'whether an alternative purpose to which (the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned (to it].' ... Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees."
 
 
 12
 Id. at 538-39 (citations and footnotes omitted).
 
 
 13
 Since this is a class action in which the majority of the members of the class are presumptively pretrial detainees, we must examine the inmate classification procedures and the conditions of detention, as they apear from the record, in light of standards established in Wolfish to determine whether plaintiffs' constitutional rights are being violated. In Block v. Rutherford, 468 U.S. 576, 584 (1984), the Supreme Court "reaffirmed the very limited role that courts should play in the administration of detention facilities," citing Ben v. Wolfish for the principle that "wide ranging deference" should be accorded to the policies instituted by the institution administrators. Block, 468 U.S. at 585 (quoting Bell v. Wolfish 441 U.S. at 547). In Block, the Court held that a ban on "contact visits" between pretrial detainees and their friends and relatives and a policy of searching cells while their inhabitants were not present bore a "valid, rational connection" to a legitimate concern with internal security and were not therefore unconstitutional. These were matters, in the Court's view, "lodged in the sound discretion of the institutional officials." 468 U.S. at 591.
 
 As the district court below observed:
 
 14
 "In this case, jail officials have concluded that the presence of homosexual inmates in the general jail population would be detrimental to order and security. It is sufficient to say that they have not been shown to be wrong in their view."
 
 
 15
 Deference in this case plainly dictates that the Sheriff's avowed purpose for segregating homosexual inmates, which bears at least some relationship to the means chosen to achieve that purpose, must be accepted as adequate to support the practice against a charge that this practice creates conditions of confinement which are cruel and unusual as punishment of convicted inmates or that serve objectively as punishment of pretrial detainees.
 
 
 16
 Bell v. Wolfish set forth the general principle that, while convicts retain constitutional rights, those rights are diminished by the fact of their lawful confinement.
 
 
 17
 "[E]ven when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security."
 
 
 18
 441 U.S. at 547. Thus, all of the constitutional objections plaintiffs raise to their segregation must be evaluated by means of the same tests of "wide-ranging deference" and reasonable relationship to a legitimate goal that apply to their objections to the conditions of their confinement.
 
 
 19
 In granting injunctive relief, the district court relied in part upon the theory that plaintiffs retain a first amendment right of association, citing Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119 (1977). Inmates have such a right, subject to the Bell v. Wolfish limitations, but a constitutional right of association Is mainly a right to political association rather than a mere right to socialize, which is essentially what plaintiffs demand in claiming a right to mingle with the general inmate population. In Jones, the claim was the right to engage in union activities.
 
 
 20
 Plaintiffs also invoke the equal protection clause of the fourteenth amendment and the concept of substantive due process. Both of these contentions are essentially challenges to the rationality of the practice of classifying inmates by sexual orientation. Much of the argument on this point seems to rely implicitly upon a premise that plaintiffs have a fundamental, right to equal treatment with nonhomosexual inmates. This premise is faulty, in view of Bowers v. Hardwick, 92 L. Ed. 2d 140 (1986). Because no high-level scrutiny is mandated by a classification by sexual preference, a rational basis for the classification is all that is required. "[L]egislation may impose special burdens upon defined classes in order to achieve permissible ends." Rinaldi v. Yeager, 384 U.S. 305, 309 (1966).
 
 
 21
 The district court held that the Sheriff's old practice of permitting the intake officer to decide whether to classify arrestees as homosexual, based on whatever criteria seemed suitable, did not accord with procedural due process. The Sheriff has suggested that this decision was incorrect, but has not made a serious issue of it by cross-appealing or otherwise. seeking to avoid cooperation with the district court's order. The district court ordered the Sheriff to fashion appropriate objective, written procedures for the intake and classifications of gay arrestees, and the Sheriff has done so. The court then approved the Sheriffs proposal. Plaintiffs now contend that these procedures are inadequate.
 
 
 22
 Hewitt v. Helms, 459 U.S. 460 (1983), held that Pennsylvania had created a constitutionally protected "liberty interest" by promulgating a set of "unmistakably mandatory" procedural guidelines to regulate the use of administrative detention. The complaint in this case is that arrestees were being segregated without benefit of reference to written guidelines. Thus, unless there is a right not to be segregated, a proposition we have rejected above, there is plainly no liberty interest in being detained in the general population rather than in the homosexual POD. See Meachum v. Fano, 427 U.S. 215 (1976). In the absence of such a liberty interest, the state is free to diminish an inmate's actual freedom without affording process. In other words, no process is due, and it would appear that the district court was incorrect in its conclusion that written procedures of some kind were constitutionally required. Therefore, the constitutional requirements of Hewitt need not be met, and the issue of the Sheriff's qualified immunity is moot.
 
 
 23
 Plaintiffs' remaining contentions are without merit.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation