*144 OPINION
GARY P. SULLIVAN, Chief Justice.

FACTUAL BACKGROUND AND PROCEDURAL OVERVIEW

Defendant was convicted of violating Title IX, § 107 of the Ft Peck Comprehensive Code of Justice (CCOJ) (Driving Under the Influence of Alcohol) after a one (1) day jury trial. Subsequent to the trial, the Tribal Court, the Honorable Leland Spotted Bird, presiding, assessed jury costs against defendant. In general terms, the defendant contends that such assessment violates his constitutional right to due process of law.

ISSUE

Does the practice by our Tribal Court, requiring criminal defendants to pay jury costs, place an impermissible burden on the exercise of a defendant’s constitutional right to a jury trial?

DISCUSSION

Defendant contends that the Tribal Court lacked specific authority to assess jury costs. He argues that the Criminal Procedures section found in Title II provide for some recoupment of costs, albeit, no specific authority to recoup jury costs: § 505(b)[1] (provides for reimbursement by defendant to the Tribes for defendant’s witnesses, in the discretion of the Court); § 507(I)[2] (provides for payment to jurors [ostensibly by Tribes] “from available funds on deposit for the purpose”); and § 601(b)[3] (provides for a money fine within statutory limits; prohibits contempt proceedings and possible jail sentence for indigent persons)
Defendant contends that the practice by our Tribal Courts requiring those criminal defendants who are found guilty to pay for jury costs is unconstitutional, on the ground that it has a chilling effect upon an accused’s right to a trial by jury. He argues that a deprivation of the right to jury trial may result, because the possibility under our Tribal Court’s practice that a *145 defendant will be ordered to pay all or part of his jury fees may cause him to decline a jury rather than run the risk of being required to pay jury fees in an unknown amount. Under this theory a defendant who elects to enter a guilty plea, or waives his right to a jury in favor of a bench trial to save jury fees, would have been deprived of his right to a jury.
The Tribes agree that no statutory authority exists to assess jury costs to convicted criminal defendants, in either the CCOJ, or the Federal Rules of Criminal Procedure. Additionally, the Special Prosecutor points out that Title I § 104[4] of the CCOJ provides that, “The Chief Judge may prescribe written rules.... The rules shall be approved by the Tribal Executive Board before becoming effective.” He concludes, however, “Therefore, jury costs must be borne upon the Tribal Government until such time as rules are prescribed and approved by the Tribal Government.”
Although the Special Prosecutor agrees that no express authority exists to assess jury costs against convicted defendants, he goes on to argue that the Tribal Court’s policy is not arbitrary, but rather, a necessary tool to assist the Court in defraying it’s mounting costs from an ever increasing number of jury trials. Implicit in his argument is the notion that recoupment for costs by the Tribes in extending a right to an accused from one who has demanded that right, is an equitable and rational solution to the problem.
During oral argument before this Court, defendant countered the Special Prosecutor’s argument by contending that the sole purpose for the Tribal Court’s practice was to discourage criminal defendants from demanding a jury trial.
The Indian Civil Rights Act[5] guarantees a criminal defendant’s right to a jury trial. Title II, § 507(a)[6] of the CCOJ mimics and slightly expands upon that guarantee. Thus, there is no question that the defendant, having been charged with the crime of “driving under the influence”, was entitled to a jury trial. Once a right is established, the question then becomes, “Does the Tribal Court have the authority to place any burden upon that right.”
We have already noted that defendant cites three (3) sections of the CCOJ, one of which provides for recoupment from criminal defendants for defense witnesses ( § 505(b)), one which provides for payment to jurors ostensibly by the Tribes (§ 507(1)), and one which allows the Court to impose a money fine upon convicted criminal defendants (601(b)). Defendant argues that none of these sections provides for recoupment of jury fees from criminal defendants to the Tribes and that if the Tribes wanted to provide for recoupment of jury costs, it would have done so in the same fashion as it did in providing for recoupment of costs for defense witnesses. *146 Whether Title I § 104, cited by the Special Prosecutor, would allow for the Chief Judge to prescribe such rules is not before us in that no such rules have been prescribed in written form. Our own search of the CCOJ and related authorities, reveal no express authority to recoup jury costs.
Thus, we conclude that the Tribal Court’s unwritten policy of exacting re-coupment of jury costs from convicted criminal defendants places an impermissible burden on those defendants’ right to a trial by jury.
On occasion we feel compelled to render advisory opinions[7] and we do so in this instance because of the importance of this issue and in the interest of judicial economy. Should the Tribal Court and/or the Tribal Council decide to establish a written policy or- enact legislation providing for recoupment of costs from criminal defendants, or should they decide to place any burden upon an individual’s right, the following opinion should prove helpful.
At the outset we note that although the Special Prosecutor' failed to cite authority for his argument that the policy established by the Tribal Court was necessary in order to stem the tide of an ever increasing number of criminal cases, we note that the United States Supreme Court does support this notion in Rinaldi v. Yeager, 384 U.S. 305, 309 [86 S.Ct. 1497, 16 L.Ed.2d 577, 580] (1966), stating, “We may assume that a legislature could validly provide for replenishing a county treasury from the pockets of those who have directly benefited from county expenditures.”
Building upon Rinaldi, the Supreme Court in James v. Strange, 407 U.S. 128, 141 [92 S.Ct. 2027, 32 L.Ed.2d 600, 610-611] (1972), said:
“We note here also that the state interests represented by recoupment laws may prove important ones. Recoupment proceedings may protect the State from fraudulent concealment of assets and false assertions of indigency. Many States, moreover, face expanding criminal dockets, and this Court has required appointed counsel for indigents in widening classes of cases and stages of prosecution. Such trends have heightened the burden on public revenues, and recoupment laws reflect legislative efforts to recover some of the added costs. Finally, federal dominance of the Nation’s major revenue sources has encouraged State and local governments to seek new methods of conserving public funds, not only through the recoupment of indigents’ counsel fees but of other forms of public assistance as well.”
While validating the principle of “re-coupment laws”, the Supreme Court between 1966 and 1978 also made it very clear such laws must not involve invidious discrimination, nor could they fail to have a rational basis. However, the circumstances under which a burden upon the exercise of a procedural right will be deemed “excessive”, or otherwise impermissible, have not been fashioned with great precision. However, a few general guidelines can be drawn from the cases.
One of the more clear examples that can be drawn is that any imposition of a cost or risk upon the exercise of a procedural right is impermissible if it has “ ‘no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them’ [citation]....” (Fuller v. Oregon, 417 U.S. 40, 54, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974).) Thus, the statutory cost provision *147 must have a real and substantial relation to a proper legislative goal.
In Rinaldi a New Jersey inmate’s prison pay was withheld to repay the County for a trial transcript that he had obtained for his appeal. While acknowledging the general concept of “recoupment” as valid, the Court went on to strike down the New Jersey statute in question, holding that, “To fasten a financial burden only upon those unsuccessful appellants who are confined in state institutions, however, is to make an invidious discrimination.[8]”
In James the Court struck down a Kansas statute which provided, inter alia, that an indigent defendant became obligated to repay the state for any amounts expended by the state on his behalf in providing him with counsel or with other legal services, and which further provided that the sum so expended, with interest, should be docketed as a judgment against the defendant for the unpaid amount if such sum remained unpaid 60 days after the defendant was notified to pay it, and that the indigent defendant was to be denied, with regal’d to such judgment, all of the exemptions [9] provided for other judgment debtors.
In Fuller the Court upheld an Oregon law ‘requiring convicted defendants who are indigent at the time of the criminal proceedings against them but who subsequently acquire the financial means to do so, to repay the costs of their legal defense. Defendants with no likelihood of having the means to repay are not even conditionally obligated to do so, and those thus obligated are not subjected to collection procedures until their indigency has ended and no manifest hardship will result’.
From this brief sampling of cases we fashion the following guidelines which would, in our opinion, allow for permissible burdens to be placed upon procedural rights:
1. That the defendant be given notice, at the earliest opportunity, that he/she may be assessed whatever costs (i.e. the costs of the jury if found guilty). In no event should the notice be given later than such time as the defendant must make his/her demand for a jury trial;
2. That the practice must not unconstitutionally discriminate against a certain class (i.e. indigent defendants, etc.) We note here that assessing costs against only convicted criminals does not discriminate in that it is rational that the Tribes not collect any reimbursement as against a defendant found innocent;
3. That the practice is narrowly construed to allow for the requirement of repayment only if a convicted defendant is, or becomes, able to pay the costs’ and that such repayment will not work a hardship on the defendant and his/her family, nor will it hamper’ his/her rehabilitation process. In no event should a defendant be subject to jail time if he/ she is financially unable to pay for the services (i.e. jury fees) rendered to which he/she had a statutory right.
Whatever may be the objectives of our Tribal Court in assessing jury costs to convicted criminal defendants, such objectives cannot be pursued by means that needlessly chill the exercise of basic consti *148 tutional rights; the question is not whether the chilling effect is intentional rather than incidental, but whether that effect is unnecessary and therefore excessive. The guidelines set forth above should provide a path to place permissible burdens upon procedural rights of criminal defendants should our Tribal Council decide to undertake that journey.
The order assessing recoupment of jury costs appealed from herein is hereby vacated and any monies collected from the defendant for recoupment of jury fees shall be returned to him within thirty (30) days of this order, with interest at the legal rate, pro rated from the time of payment until such time the amount is refunded.
Concur: GARY M. BEAUDRY and GERARD M. SCHUSTER, Associate Justices.

. § 505(b) provides: "Witness Expenses” . . . "(b)The expenses provided for in this section shall be paid by the Tribes upon completion of the trial, but such expenses associated with witnesses called by the defendant may be taxed as costs against the defendant if he/she is found guilty and in such case a judgment for the costs shall be entered against the defendant, provided however, that no defendant shall be imprisoned solely because of his/her inability to pay such costs.”

. § 507(1) provides: “Each member of the jury panel called to service and each juror who serves upon a jury shall be entitled to compensation at the rate paid to jurors by Roosevelt County, Montana, and may, in the discretion of the presiding judge, be allowed mileage at a rate to be fixed by the Court. All payments of per diem and mileage shall be supported by vouchers signed by the presiding judge. Such vouchers shall be paid in order of presentation, from available funds on deposit for the purpose.”

. § 601(b) provides: "A money fine in an amount not to exceed the maximum permitted by the code provision defining the offense. If the Court determines that a convicted offender is unable to pay forthwith a money fine assessed under this section or costs assessed under § 505 of this Title, the Court shall allow him/her a reasonable period of time to make installment payments to the clerk of the court at specified intervals until the entire sum is paid. If the offender defaults on such payments the Court may find him/her in contempt of court and punish him/her accordingly, but no person shall be held in contempt of court where nonpayment is because of indigence. Any convicted person may, if he/she so chooses, elect to serve time in prison at the rate of five dollars ($5.00) per day to be credited against any fine or costs such person owes.”

. Title I § 104 provides: “Rules of Court The Chief Judge may prescribe written rules of Court, consistent with the provisions this code, including rules establishing the time and place of court sessions. The rules shall be approved by the Tribal Executive Board before becoming effective.”

. 25 USCS at 1302. Constitutional rights
No Indian tribe in exercising powers of self-government shall—
... (10) deny to any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury of not less than six persons.

. Title II § 507(a) provides: "Any person accused of a crime punishable by imprisonment shall be granted a jury trial, upon his/her request made at (the) time of arraignment. A jury shall consist of at least six (6) members of the Tribe selected at random from a list of eligible jurors prepared each year by the Court."

. See In re: Matter of Mariah Watchman, FPCOA # 242 at page 6.

. It should be noted that the Court was not condemning the practice of “singling out” convicted defendants, but rather, it was condemning the requirement that only state prison inmates were subject to the statute and not those fined, given suspended sentences, or placed on probation.

. The statute provided that the indigent defendant would be denied all of the exemptions except the homestead exemption.